# CARRIER v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

## Division Two, June 9, 1903.

1. **Nonsuit: PAYMENT OF COSTS: SUBSEQUENT ACTION.** Whether or not the trial court will restrain plaintiff from prosecuting the suit until he pays the costs in a former suit based on the same cause of action, in which he has suffered a nonsuit, rests in the sound discretion of the trial court, and from its decision thereon there is no appeal.

2. **Non-resident: POOR PERSON: SECURITY FOR COSTS.** It is within the discretion of the trial court whether it will require a non-resident plaintiff to give security for costs before permitting him to bring or prosecute his action, as it is also within its discretion to permit such non-resident to sue as a poor person.

3. **Negligence: WALKING ON TRACK.** A man of defective hearing in walking from one town to another, instead of the public road chose the railroad track, which was fenced on both sides, and had not been used for travel by pedestrians, and when near the corporate limits of the town to which he was going, was struck by a train and killed. *Held,* that he was guilty of gross negligence, and that the facts that no whistle was sounded or bell rung, and that the engineer did not see him although he could have seen him by the exercise of ordinary care in time to have avoided the accident, do not authorize a recovery against the road. The man was not a licensee, but simply a trespasser, and there being no wantonness or willful disregard of human life in the conduct of the engineer, there can be no recovery against the railroad.

4. ———: ———: **DUTY OF ENGINEER.** To a trespasser on a railroad track an engineer on the train which struck him owed him no duty unless he saw him.

5. ———: ———: **CONDITION OF TRESPASSER.** Even though the engineer saw the trespasser walking on the track in ample time to have stopped the train before hitting him, yet if he did not know that the pedestrian was deaf or not in the possession of his other faculties, he had a right to presume that he was a prudent person and would step out of danger.

6. ———: ———: **DUTY TO TRESPASSER.** The duty of those in charge of a train to use all reasonable efforts within their power to avoid injuring a trespasser on the track arises only after his perilous position is discovered. The company owes such person no duty to be on the lookout for him, and is not chargeable with not seeing him unless the conduct of its servants in operating the train was wanton, reckless or in disregard of human life.

Carrier v. Mo. Pac. Ry. Co.

Appeal from Johnson Circuit Court. — *Hon. Samuel Davis*, Special Judge.

REVERSED.

*R. T. Railey* for appellant.

(1) As the petition fails to charge defendant with wanton, willful or reckless negligence, and as there is not a syllable of evidence sustaining such charge, plaintiff is not entitled to recover. Davies v. Railroad, 159 Mo. 8; Holwerson v. Railroad, 157 Mo. 242. (2) Deceased was a trespasser upon defendant's track, which contained cattle guards and a warning sign, and which was fenced on each side with a wire fence. He was not at a crossing, and was making a footpath of the right of way, within a few feet of the public road, without the slightest excuse therefor, well knowing at the time that he was hard of hearing, and liable to be run over by a train from the rear. Deceased was therefore not only negligent, but guilty of gross negligence, in being upon defendant's premises under the circumstances aforesaid. It being in the country, not in a populous neighborhood, and not at a crossing, defendant's servants were not required to be on the lookout for him while there. Feeback v. Railroad, 66 S. W. 965; Loring v. Railroad, 128 Mo. 360; Barney v. Railroad, 126 Mo. 388; Berry v. Railroad, 124 Mo. 300; Barker v. Railroad, 98 Mo. 54; Williams v. Railroad, 96 Mo. 282; Henry v. Railroad, 76 Mo. 295; Hallihan v. Railroad, 71 Mo. 116. It therefore became necessary for plaintiff to show that deceased was in peril, on or near defendant's track; that he was actually seen by those in charge of the train, in such peril, in time to have stopped the train and avoided the injury. We challenge counsel to point out a scintilla of evidence, either proving or tending to prove that he was seen by defendant's servants, or that any of them were even looking

in' the direction of deceased. As he was not injured below the waist, it is plain that, if struck at all, his injury must have been 'inflicted by the passing train. There being no proof, however, that he was on the track, in peril, or that he was seen by defendant's servants, it was the plain duty of the court to direct a verdict for defendant. (3) Under the circumstances of this case, defendant's servants were not required to be on the lookout for deceased. Under the facts disclosed by the record, defendant's servants in charge of 'ts train at the time and place where deceased was found, had the right to anticipate a clear track, and were not guilty of negligence if they failed to see deceased, even if he had been upon or close to said track. Maher v. Railroad, 64 Mo. 269; Yarnell v. Railroad, 75 Mo. 579; Donahoe v. Railroad, 83 Mo. 554; Maloy v. Railroad, 84 Mo. 274; Barker v. Railroad, 98 Mo. 53; Shaw v. Railroad, 104 Mo. 656; Sinclair v. Railroad, 133 Mo. 240; Coatney v. Railroad, 151 Mo. 41. (4) The record shows that plaintiff had been non-suited on the merits in a former case, and without any claim that she had additional evidence, the court below overruled our motion to restrain her from prosecuting the second suit without paying the costs of former litigation. The petition in the present suit and that in former case are substantially, if not identically, the same. No claim is anywhere made in the record that plaintiff had any additional or different testimony to that produced at the former trial. Presumably, therefore, the present suit was vexatious and it devolved upon plaintiff to show that it was not. Having signally failed to do so, our motion should have been sustained. Hewitt v. Steele, 136 Mo. 332; Jones v. Barnard, 63 Mo. App. 504; Buckels v. Railroad, 47 Fed. 424; Ripley v. Benedict, 4 Cow. 19; Perkins v. Hinman, 19 Johns. 237; Taylor v. Vandevert, 9 Wend. 449; Kentish v. Tatham, 6 Hill 372; Jackson v. Carpenter, 3 Cow. 22; Ex parte Stone, 3 Cow. 380; Fleming v. Ins. Co., 4 Pa. St. 475; Felt v.

Amedon, 49 Wis. 66; Garrish v. Pratt, 6 Minn. 53; Henderson v. Griffin, 5 Pet. 151.

*O. L. Houts* for respondent.

(1)   Plaintiff's evidence showed, and the jury found, that deceased was in a place of peril on defendant's track; that its engineer or fireman, or both, saw his peril in time, by the exercise of ordinary care, to have saved his life; that they failed to exercise such care; and, by reason thereof, he was killed.   Defendant introduced no evidence in conflict with the evidence of plaintiff, which stood uncontradicted.   On the evidence and facts proven, under all the authorities, defendant was liable and its demurrer to the evidence was properly overruled.   Chamberlain v. Railroad, 133 Mo. 587; Sinclair v. Railroad, 133 Mo. 233; Reardon v. Railroad, 114 Mo. 385; Morgan v. Railroad, 159 Mo. 262.   (2)   The negligence of defendant, including the fact that the engineer or fireman, or both, saw deceased in peril in time, by the use of ordinary care, to have saved his life, was conclusively shown by the evidence.   It was competent to make the proof by circumstantial evidence, which is generally the only kind obtainable by a plaintiff in a case of this kind.   Rine v. Railroad, 100 Mo. 234; Sinclair v. Railroad, 133 Mo. 241.

BURGESS, J.—This is an action by plaintiff, the widow of T. E. Carrier, deceased, to recover from defendant five thousand dollars damages for negligently and carelessly killing her husband on the 15th day of January, 1899.

The petition alleges that on said date defendant was operating a line of railway through the city of Warrensburg, county of Johnson, and that on said 15th day of January, 1899, and for a long time prior thereto defendant's railway and track in said city and extending

for a long distance west thereof was and had been used by persons and the public as a traveled way; that on said 15th day of January the said T. E. Carrier was upon defendant's track and right of way west of the city limits of said city and where the said track and right of way was used as a traveled way as aforesaid, walking and traveling to the said city, and an engine and train of cars owned and operated by the defendant, going east and called train number 2, approached the said T. E. Carrier from the rear along said track and he became and was in great danger and imminent peril of being run over, killed and injured by said train; that defendant, its officers, servants, agents and employees running, conducting, operating and managing said train saw the said T. E. Carrier and his said peril and danger and became aware thereof in time, by the exercise of ordinary care, to have stopped said train and averted any injury to him and by the exercise of ordinary care could have seen him and become aware of his said peril and danger in time to have stopped said train and prevented his injury; that after seeing the said T. E. Carrier and becoming aware of his said peril and danger and after they could have seen him and become aware of his said peril and danger by the exercise of ordinary care as aforesaid, the said defendant, its said officers, servants, agents and employees negligently and carelessly failed to sound the usual and ordinary danger signals, and failed to sound them in time to avert the injury to said T. E. Carrier, and negligently and carelessly neglected to use air brakes and other appliances for stopping said train, and negligently failed to use the appliances at hand and provided for putting said train under control, but negligently and carelessly ran said engine and train upon and over the said T. E. Carrier and injured and killed him at the time and place aforesaid, to the damage of the plaintiff in the sum of five thousand dollars, for which she prays judgment with costs.

The defenses were general denial, contributory negligence in illegally, wrongfully and without authority of law, while deaf and dumb, going upon defendant's right of way, and while not paying any attention to the operating and running of defendant's train, and by his negligence and carelessness and without fault of the defendant, going upon its track and receiving the injuries complained of. That defendant had no knowledge of the fact that said deceased was either deaf or dumb or on said premises.

Plaintiff replied, admitting that deceased, T. E. Carrier, went upon defendant's right of way, stepped near its track, that he also stepped and went upon defendant's track, and states that he received the injuries complained of when near or upon said track, and admits that defendant did not know the deceased was deaf or dumb, and avers that he was neither deaf nor dumb. All other allegations in the answer are denied.

The trial resulted in a verdict and judgment in favor of plaintiff for five thousand dollars, from which defendant appeals.

It appears from the record that plaintiff brought suit to the June term, 1899, of the circuit court of Johnson county, upon this same cause of action, and that, after the issues had been made up and a large amount of costs had accumulated and the case brought to trial before the court and a jury, plaintiff took a nonsuit, and thereafter instituted this suit, on the same cause of action, without having paid the cost, or any part of it, which accumulated in the former suit. After the institution of the suit at bar defendant filed its motion to restrain plaintiff from the prosecution of this suit until the costs of the former suit were paid; and to require her to give security for the costs of this suit.

In the meantime plaintiff had become. and was at the time of the institution of this suit a non-resident of this State, and a resident of the State of Kansas.

The motion to restrain, or that part of the motion that asked the court to restrain the plaintiff from prosecuting this action, was overruled, and that part of the motion to require plaintiff to give security for cost sustained, and plaintiff allowed to sue as a poor person.

On Sunday morning, January 15, 1899, T. E. Carrier started to walk from Centerview, which is six miles west of Warrensburg, Johnson county, on the line of the Missouri Pacific railway, to Warrensburg. The dirt road being muddy he started out on the railroad track, and when nearing Warrensburg he was struck and fatally injured by one of defendant's regular passenger trains which arrived at that place from the west, between eleven and twelve o'clock on that day. A short time after the train passed by, deceased was found lying a short distance south of the south rail of the track, and about fifteen to twenty steps west of the corporate limits of the city of Warrensburg. He was lying, when found, on the south side of the track, his feet south, and his head about six inches from the track. The left side of his skull was mashed in, and his shoulder hanging limp. He was bleeding. He was alive when found, but died the same day. The track for four hundred yards west of where deceased was found is comparatively straight, and there was at the time of the accident nothing to obstruct the view of the engineer in charge of the train for that distance up to where Carrier was found, and if he had looked he could have seen the train, and if the engineer had been looking he could have seen Carrier. The train was moving at the usual speed. Deceased was a mute and hard of hearing, but could hear loud sharp noises. When last seen before the accident he was within a mile of the corporate limits of Warrensburg, and going in that direction walking between the rails of defendant's track.

There was no crossing at the place where deceased was found. There were no signals of any kind given by the train crew as a warning to the deceased.

There was a ditch on the south side of the railroad track, from where deceased was found, running west parallel with said railroad track, for a distance of one hundred and eighty feet, to a culvert.

Between the end of the ties and the north edge of this ditch, from where deceased was lying, and west towards said culvert, there was a pathway from three and a half, to four feet and eight inches in width, outside of the ties.

The testimony is conflicting as to whether there was any water in the ditch where deceased was lying. These witnesses who testified that the ditch contained water described it as only six or eight inches wide at the bottom of the ditch, while the ditch at the bottom was from a foot to eighteen inches in width.

The shoes of deceased when he was found after the injury, were dry, and had no mud thereon.

The right of way was fenced on each side with wire fence.

There was a warning sign, with plain letters printed thereon, prior to the accident, located fifteen hundred feet west of defendant's depot at Warrensburg, and near the track.

There was a public road running from Ft. Scott crossing to Warrensburg, nearly parallel with the railroad track, and close to same.

There was no house except one out in that vicinity.

There is a heavy up grade from Ft. Scott crossing to Warrensburg and the train going up this grade usually makes a loud rumbling noise and can be heard for some distance.

No witness testified to having seen the engineer or fireman in the cab or looking in the direction in which deseased was traveling.

There is no evidence in the record to the effect that any of the train crew were looking in the direction deceased was walking, or that any of the train crew were seen by any person prior to the accident.

Defendant offered no evidence.

At the close of the evidence defendant asked an instruction in the nature of a demurrer to the evidence which was refused, and an exception duly saved.

Over the objection of defendant the court at the instance of plaintiff instructed the jury as follows:

"1.    The court instructs the jury that if they believe from the evidence that T. E. Carrier was killed by the train of defendant mentioned in evidence; that at the time he was killed he was the husband of plaintiff; that this suit was brought within one year after his death; that while walking upon defendant's right of way or upon or near its track, he became in imminent peril of being struck by one of defendant's trains; that defendant's employees in charge of said train became aware of his peril of being struck in time to have enabled them by the exercise of ordinary care to have stopped said train, or to have rung the bell or sounded the whistle and to have averted injury to said Carrier; that said employees failed to exercise said care and stop said train or ring said bell or sound said whistle in time to avert said injury; that by reason of such failure to exercise such ordinary care the train was not stopped, the bell was not rung, or the whistle was not sounded; and the said Carrier was struck and killed by said train, then the jury must find for the plaintiff, though the jury may find that the deceased Carrier was guilty of negligence in walking upon the defendant's right of way.

"By 'ordinary care' is meant such care as a careful and prudent person would exercise under the same or similar circumstances.

"2.    The court instructs the jury that under the law, if they find for plaintiff, their verdict must be for $5,000.    That it can not be more or less than that sum, if for the plaintiff."

The action of the trial court in overruling defendant's motion to restrain plaintiff from prosecuting this

action until the costs in the former suit upon the same cause of action were paid, and in making an order requiring plaintiff to give security for costs in the case at bar, and, then permitting her to prosecute it as a poor person, is assigned for error. Wtih respect to the first proposition it seems to be a matter resting in the sound discretion of the court and not appealable. [Hewitt v. Steele, 136 Mo. 332; Loan & Trust Co. v. Brown, 59 Mo. App. 461; Daniels v. Moses, 12 S. Car. 130; Harless v. Petty, 98 Ind. 53; Kitts v. Willson, 89 Ind. 95; Drake v. New York Iron Mine, 71 Hun (N. Y.) 211; Hennies v. Vogel, 87 Ill. 242.]

As to the next proposition, section 1542, Revised Statutes 1899, provides that, "in all civil cases when the plaintiff or persons for whose use the action is to be commenced, shall not be a resident of this State, the plaintiff or person for whose use the action is to be commenced shall, before he institutes such suit, file with the clerk of the court in which the action is to be commenced the written undertaking of some person, being a resident of this State, whereby he shall acknowledge himself bound to pay all costs which may accrue in such action; and if any such action shall be commenced without filing such undertaking, or depositing with the clerk of the court in which said suit is brought, a sum of money sufficient to pay all costs that may accrue in the case, subject to be increased at any time, whenever the court may deem proper, and by its order of record require, the court, on motion, may dismiss the same, unless such undertaking be filed or sum of money be deposited before the motion is determined, and the attorney of the plaintiff shall be ruled to pay all costs accruing therein."

The following section, 1543, is to the same effect, except it applies to a party plaintiff who becomes a nonresident of the State after the institution of the suit.

Section 1545, Revised Statutes 1899, provides that: "If any court shall before or after the commencement

of any suit pending before it, be satisfied that the plaintiff is a poor person, and unable to prosecute his or her suit, and pay the costs and expenses thereof, such court may, in its discretion, permit him or her to commence and prosecute his or her action as a poor person, and thereupon such poor person shall have all necessary process and proceedings as in other cases, without fees, tax or charge; and the court may assign to such person counsel, who, as well as all other officers of the court, shall perform their duties in such suit without fee or reward, but if the judgment is entered for the plaintiff, costs shall be recovered, which shall be collected for the use of the officers of the court.''

It will be observed that section 1542, supra, provides that if an action shall be brought by a non-resident without filing the written undertaking of some person being a resident of this State, whereby he shall acknowledge himself bound to pay all costs which may accrue in such action, and if any such action shall be commenced without filing such undertaking or depositing with the clerk of the court in which such suit is brought, a sum of money sufficient to pay all costs that may accrue in the case, subject to be increased at any time whenever the court may deem proper, and by its order of record require, the court on motion *may*, not shall, dismiss the same, unless such undertaking be filed or sum of money be deposited before the motion is determined. Thus leaving it entirely within the discretion of the court whether it will in any event dismiss the suit for the failure of the plaintiff to secure the costs. A like discretion is conferred upon the court by section 1545, supra, with respect to allowing a plaintiff to prosecute a suit when satisfied that he or she, as the case may be, is a poor person, and unable to prosecute his or her suit and pay the costs and expenses thereof. The court, in such case, *may in its discretion* permit him or her to prosecute his or her action as a poor person, and, the

discretion to do so, is not restricted to citizens *of this State,* but applies alike to all persons, who are entitled to sue in the courts of record in this State. We therefore think the motions were properly overruled.

The conduct of Carrier in going upon and walking along on defendant's track, or along the side thereof, until struck by a passing train, can only be characterized as the grossest negligence, especially when his defective hearing is considered.

The accident occurred in the country, away from any crossing, where the right of way was fenced on each side with a wire fence. There was only one dwelling house in the immediate neighborhood, and the accident occurred at a point where those in charge of the train had the right to anticipate a clear track, and were not therefore required to look out for trespassers on the track. There was no evidence showing the relative position of deceased to the track at the time of the injury, whether on the track, or in proximity to it. Nor was he shown to have been seen by any of those in the management of the train prior to the injury.

In the absence of evidence tending to show that the engineer in charge of the engine actually saw deceased, defendant owed him no duty.

In Feeback v. Railroad, 167 Mo. l. c. 215, it is said:

"Unless the damage complained of arises out of a failure to perform a legal duty to the person injured, there is no cause of action. . . . The plaintiff's husband was a trespasser on the train and the only duty the defendant owed him was to avoid inflicting injury to him wantonly."

That the evidence conclusively shows such contributory negligence on the part of deceased as to prevent plaintiff's recovery, no reasonable minds can well differ. He went upon or within the danger line of defendant's track and walked eastwardly on or along the same so near thereto as to imperil his life without looking or

Vol 175 mo—31

paying any attention whatever to his surroundings, when by looking he could have seen the train that collided with him, and have avoided the danger to which he thus voluntarily and recklessly exposed himself. A stronger case of contributory negligence could not well be made out.

As was said by BRACE, J., in Tanner v. Railroad, 161 Mo. 1. c. 511: "No reasonably prudent man will do so. Hence, it must be held that the plaintiff was guilty of such contributory negligence, in being within the danger line  . . .  when he was struck, as to preclude a recovery, and that the court committed error in sending the case to the jury, unless after the plaintiff had thus put himself in a place of danger, the conduct of the defendant's employees in the management of the train was characterized by such willful, reckless, or wanton disregard of human life, as that the defendant shall not be heard to say that the plaintiff was guilty of such negligence. [Morgan v. Railroad, 159 Mo. 262; Kellny v. Railroad, 101 Mo. 67.] We have looked in vain through all the evidence in this voluminous record, for indicia of such willful, reckless or wanton disregard of human life upon the part of defendant's servants." Moreover, even if the engineer had seen deceased within the line of danger from the approaching train, he had the right to presume that he was in possession of all his faculties, was a prudent person having due regard for his own safety from the approaching train, "that he would be on the lookout for it, and would step out of its way as it approached him, and leave the way clear, and hence there would be no necessity for stopping the train on his account.  . . .  This would have been the conclusion of an ordinarily prudent manager of the movement of such train, and the defendant's servants thus managing the train in question can not be convicted of willful, reckless or wanton disregard of human life in not stopping the train before it reached the place where plaintiff was struck, because

forsooth he proved to be an imprudent person without proper regard for his own safety, and did not step out of the way of the train, as he might easily have done, and as he would have been reasonably expected to do. The demurrer to the evidence ought to have been sustained." [Sharp v. Railroad, 161 Mo. 235.]

The servants of defendant had no reason to anticipate that deceased or any other person would be on its track, or so near thereto as to be in danger of being struck by the train, and were not required to keep a lookout for such persons; they did not see deceased before he was struck and if they had seen him in a place of danger they had a right to presume that he would withdraw to a place of safety, and it did not become their duty to give a warning signal, or to check the speed of the train in order to prevent injuring him until they had reason to believe that he did not hear or see the train; then it would have become their duty to use every reasonable means at their command, not inconsistent with the safety of the train, and the passengers, in order to prevent injuring him.

But, as we have said, there was no evidence that defendant's employees in charge of the train saw deceased before he was struck, and it was therefore improper to submit that question to the jury. In Morgan v. Railroad, 159 Mo. 282, deceased and others had been in the habit of using the railroad track in the outskirts of a town as a passway, where deceased was killed by a tender in front of an engine upon which coal was piled up so as to obstruct the view of the engineer. VALLIANT, J., in speaking for the court, said: "So in the case at bar, it was improper to have submitted to the jury the question as to the conduct of defendant's servants after they became aware of the peril of the deceased, for the reason that there was no evidence tending to show that they did see him at all."

In Barker v. Railroad, 98 Mo. 50, plaintiff lived close to defendant's track: "There was a public road thirty-five feet south of his house; the south side of this road was separated from the defendant's right of way by a fence, and the track of the Wabash Railway Company ran parallel to the track of the defendant, but adjoining and to the south thereof. Barker left his house, went south across the public road which leads directly to St. Joseph, got over the fence, and ascended a bank some six or eight feet in height to the defendant's track. He then started westward on the track towards St. Joseph, where he was going, without stopping or looking to the east. He had not travelled more than sixty to seventy-five feet when a regular daily westbound passenger train came through a cut, around a curve and on a down grade, and ran over and killed him. Had Barker looked to the east he could have seen the train for a distance of two hundred yards, and the engineer could have seen a person on the track for nearly the same distance. Barker knew the train was due when he got upon the track. There was a tie train standing on the Wabash track at the time, and it seems probable that his attention was attracted to the men at work on that train. He was a little hard of hearing, but could hear ordinary conversations. The evidence tended to show that no signal was given by sounding the whistle or ringing the bell; and that the train, if on a level track, could have been stopped in a distance of one hundred yards. It does not appear within what distance it could have been stopped on this down grade. There can be no doubt that Barker was guilty of negligence in going upon the track at a time when he knew the train was due, without looking or listening for it. Besides this he got upon the track at a place other than a crossing, and was making a footpath out of the railroad track, and that, too, at a place where the defendant was required to and had fenced its road. In short he was a trespasser, declared to be such by the statute

law of this State. [R. S. 1879, sec. 809.] Being a trespasser, the company owed him no duty, except not to wantonly, willfully or with gross negligence injure him. The company was not in duty bound to look out for him. [Maher v. Railroad, 64 Mo. 267; Hallihan v. Railroad, 71 Mo. 113; Maloy v. Railroad, 84 Mo. 270; Rine v. Railroad, 88 Mo. 392; Williams v. Railroad, 96 Mo. 275; Langan v. Railroad, 72 Mo. 392; Comly v. Railroad, 12 Atl. 496.]

"Some of the authorities just cited and many others show that though a person is a trespasser on a railroad track, still if such person is in a dangerous position to the knowledge of the servants of the railroad company, then it becomes their duty to use all reasonable efforts within their power and at their command to avoid injuring such person thus in the wrong. [Shear. & Redf. on Negligence, sec. 36.] But this duty on the part of the defendant's servants only arises when and after the perilous position of the person is discovered. Now, in this case, there is no evidence whatever of a wanton or willful injury; nor is there any evidence tending to show that the engineer saw the deceased on the track in time to have avoided the calamity. The fact that no signal was given tends to show that the deceased was not seen by the engineer, in the absence of any other evidence. But the argument is made on behalf of the plaintiff that if the engineer was at his post of duty and on the lookout, he could have seen the deceased, and if he was not, then he was guilty of negligence. The answer to all this is that the company owed the deceased no duty to be on the watch for him. As to a passenger, it was of course the duty of the engineer to see that he had a clear track, but the defendant owed no such a duty to the deceased. As to him there was no breach of duty for a simple failure to discover him in the commission of a trespass. As stated by a reliable text-writer, the general duty of a railroad company to run its trains with care becomes a particular duty to no one until he

is in a position to have a right to complain of neglect. [Cooley on Torts, 660.] The deceased was in no position to complain of neglect on the part of the engineer and would only be in such a position when and after it is made to appear that some person in charge of the train saw or knew of his presence on the track in time to have avoided the injury. It is thought advisable to say again that Barker got upon the track and was killed at a place where the defendant's road was fenced and where there was nothing in the surroundings that would naturally or reasonably lead the servants in charge of the train to suspect that persons would be on the track. We have been speaking of the case before us, and not of others which may present a different state of facts. The death of plaintiff's husband can be attributed to nothing but his own wrongful act and reckless carelessness, and the plaintiff has no just ground for damages against the defendant, and the judgment is simply reversed.''

From these considerations the conclusion is irresistible that the deceased was guilty of inexcusable negligence contributing directly to his death, and as there was nothing in the conduct of the servants in the management of the train indicating a willful, wanton or reckless disregard of human life, also contributing to his death, the plaintiff is not entitled to recover in this action.

It follows that the court erred in not sustaining the demurrer to the evidence interposed by defendant, and in giving the instructions in behalf of plaintiff.

The judgment is reversed. All of this Division concur.