NELSON P. ROWE, by Next Friend, WILLIAM R. ROWE, respondent, v. MARY K. HAMMOND, Appellant.

Kansas City Court of Appeals, May 19, 1913.

1. **NEGLIGENCE: Personal Injuries: Collision: Automobiles; Coasting on Street.**  The plaintiff, a boy nine years old, sued to recover damages for personal injuries sustained when run over by the defendant's automobile.  The injury occurred about seven o'clock in the evening, while the plaintiff and several other children were coasting on a bobsled.  As the plaintiff and his companions reached the intersection of Thirty-seventh street and Baltimore avenue, they gave warning by their cries.  The defendant's automobile approaching at a swift speed, ran into the sled and injured the plaintiff.  *Held*, that the defendant saw or should have seen the peril of plaintiff in time to have avoided the injury by the exercise of reasonable care.

2. ———: ———: **Coasting in Street.**  The use of the public streets of Kansas City, for coasting is forbidden not only by the ordinance but by the rules of the common law which declares such to be a nuisance *per se*.

3. ———: ———: **Wanton and Willful Acts.**  To run a car at twenty miles an hour over a street intersection in a populous district without looking to right or left and without checking speed, is so clearly negligent, so dangerous and so violative of every natural instinct of humanity as to partake of the nature of a wanton and willful act.

Appeal from Jackson Circuit Court.—*Hon. Jas. E. Goodrich*, Judge.

AFFIRMED.

*E. R. Morrison, James E. Nugent, C. A. Bissett* and *McCune, Harding, Brown & Murphy* for appellant.

(1)   In coasting on this street plaintiff was directly violating the ordinances of Kansas City and was assisting in maintaining a common law nuisance; as such he was a trespasser and defendant was not bound to anticipate his presence and owed him only the duty of not injuring him after actual knowledge of his presence.   Williams v. City of St. Joseph, 148 S. W. 459; Barney v. Railroad, 126 Mo. 372; Reusch v. Rolling Mill Co., 118 Ky. 369, 80 S. W. 116; Thomas v. Railroad, 93 Iowa, 248, 61 N. W. 967; Sheehan v. Boston, 171 Mass. 296; Doherty v. Ayer, 197 Mass. 241, 83 N. E. 677, 14 L. R. A. (N. S.) 816; Feeley v. City of Melrose, 91 N. E. (Mass.) 306; Chase v. Railroad, 94 N. E. (Mass.) 377.   That coasting is a nuisance at common law.   Reusch v. Rolling Mill Co., supra; Wilmington v. Vandegrift, 1 Marv. (Del.) 5, 29 Atl. 1047, 65 Am. St. Rep. 256, 25 L. R. A. 538; Schultz v. Milwaukee, 49 Wis. 254, 5 N. W. 342; Taylor v. City of Cumberland, 64 Md. 68.   (2)   No duty being owed to the plaintiff to discover his peril, he cannot recover on the ground that defendant might nevertheless have seen him while discharging a general duty owed to those rightfully on the street.   Barker v. Railroad, 98 Mo. 54; Carrier v. Railroad, 175 Mo. 470; Frye v. Railroad, 200 Mo. 277; Degonia v. Railroad, 224 Mo. 592; Rohbach v. Railroad, 43 Mo. 187; Bell v. Railroad, 72 Mo. 58; Burger v. Railroad, 112 Mo. 246 l. c.; Elliott on Roads and Streets (3 Ed.), sec. 1139; Kiley

v. Kansas City, 87 Mo. 103; Shearman and Redfield on Negligence (5 Ed.), sec. 8; Faris v. Hoberg, 134 Ind. 274. (3) Defendant was not required to anticipate that any one would be violating the law by coasting on this street. Hutchinson v. Railroad, 161 Mo. 254, and cases cited; Weller v. Railroad, 164 Mo. 199. (4) And under all the facts in this case, even under the most favorable view of the law, the possibility of the discovery of the sled was so remote and speculative that a recovery could not be upheld. McGee v. Railroad, 214 Mo. 530; White v. Railroad, 141 S. W. 436; Markowitz v. Railroad, 186 Mo. 350; Hawkins v. Railroad, 135 Mo. App. 524; Veatch v. Railroad, 145 Mo. App. 232.

*Boyle & Howell, Glen L. Bruner* and *Jos. S. Brooks* for respondent.

(1) A high degree of care is required by statute in the operation of automobiles. (a) They are so powerful, swift and dangerous in a collision, that care commensurate with the risk of injury to others, on the road, is required to be exercised. This risk is greater than in the case of ordinary vehicles. It is the duty of the driver of an automobile to keep a vigilant watch ahead and on the first appearance of danger to take proper steps to avert it. McFern v. Gardner, 121 Mo. App. 1; Bongner v. Ziegenheim, 165 Mo. App. 328; Scholl v. Grayson, 147 Mo. App. 652; Moore v. Transit Co., 199 Mo. 1. (b) The defendant was required to exercise a degree of care commensurate with the risk. Bongner v. Ziegenheim, supra. (2) Even though the plaintiff may have been a trespasser on the street where the collision occurred, that fact did not discharge the appellant, or her chauffeur, from the observance of due care, and she is responsible here, having failed to exercise ordinary care to avoid the accident. Isabel v. Railroad, 60 Mo. 475; Murphy v.

Railroad, 228 Mo. 56, 79; Werner v. Railroad, 81 Mo. 374; Woods v. Railroad, 188 Mo. 229; Fearons v. Railroad, 180 Mo. 208; Auna v. Railroad, 96 Mo. App. 543; O'Brien v. Hudner, 13 Am. Neg. 325; Harrington v. Railroad, 140 Cal. 514; Rawitzer v. Railroad, 93 Minn. 84. (a) Besides appellant was not the exclusive owner of the street and the plaintiff was not reduced to the status of a trespasser so far as his right not to be run over is concerned. O'Brien v. Hudner, 13 Am. Neg. 325; Harrington v. Railroad, 140 Cal. 514; Rawitzer v. Railroad, 93 Minn. 84. (3) (a) Every litigant has a right under the constitution when he has offered substantial evidence tending to prove his case to have it submitted to a jury. McFern v. Gardner, 121 Mo. App. 5. (b) And for the purpose of determining whether or not there is substantial evidence to submit to the jury, the testimony of plaintiff should be accepted as true and every reasonable inference in his favor should be drawn therefrom. McFern v. Gardner, 125 Mo. App. 6; Ladd v. Williams, 104 Mo. App. 390. (4) The uncontradicted testimony in the case is that the screams of the occupants of the sled were heard blocks away, and that the automobile was being run at a high and dangerous and prohibited rate of speed. Section 8519, R. S. 1909, makes it a criminal offense to run an automobile at a greater rate of speed than 10 miles an hour and the ordinance of the city limits the speed to twelve miles an hour. The defendant negligently, carelessly and recklessly and heedlessly run over the women and children on this sled. Under such circumstances knowledge will be inferred. R. S., sec. 8519, 8522; Rev. Or. K. C., 1909, sec. 872; State v. Watson, 216 Mo. 420, 434; Scholl v. Grayson, 147 Mo. App. 652; Moore v. Transit Co., 194 Mo. 1.

JOHNSON, J.—Plaintiff, a boy nine years old, was injured in a collision between a sled on which he

was coasting and an automobile owned by defendant and driven by her chauffeur. This suit is for the recovery of damages resulting to plaintiff from the injury which he alleges was caused by negligence of defendant. The petition alleges negligence in running the automobile at a dangerous and unlawful speed and also charges negligence under the humanitarian rule. At the close of the evidence the first charge was withdrawn from the jury and in the instruction given at the request of plaintiff the cause was submitted on the issue of whether or not the injury was caused by the negligence of the chauffeur in running defendant's car into the sled after he became aware ''or by the exercise of ordinary care could have become aware'' that plaintiff was in a position of danger.

The jury resolved this issue in favor of plaintiff and returned a verdict for him in the sum of $500. Defendant appealed and her counsel argue that the court erred, first, in refusing their request for a peremptory instruction and, second, in refusing to instruct the jury that defendant ''owed the plaintiff no duty except the duty of using ordinary care to avoid injuring him after his peril, if any, became actually known'' to the chauffeur.

The injury occurred about seven o'clock in the evening of January 14, 1911, at the intersection of Baltimore avenue and Thirty-seventh street in Kansas City. Plaintiff, two other children and two adults were coasting down Thirty-seventh street on a bobsled and as the sled was crossing Baltimore avenue at swift speed it was run into by defendant's automobile which was running at nineteen or twenty miles per hour and all of the riders of the sled were severely injured, one of them being killed outright. The locality is in a thickly settled residence district, all of the streets are paved and all are much used for purposes of travel. Thirty-seventh street runs east and west and from Broadway east runs down hill to Main

street and beyond, intersecting, in turn, Central, Wyandotte streets and Baltimore avenue, north and south streets. From Broadway to Baltimore avenue the grade is much steeper than it is from Baltimore avenue to Main street. On the evening in question the pavements were covered with ice and both adults and children were coasting on sleds from Broadway to Main street where most of the sleds were stopped to avoid crossing street car tracks.

Plaintiff was lying on the front end of the sled, face downward, and was doing the steering. The other riders were seated behind him. The sled carried no light nor any instrument for giving warning, but the riders screamed warning cries as they approached street intersections and the noise they made was plainly heard even in near-by houses. We judge from the evidence of plaintiff that the speed of the sled as it traversed the way between Wyandotte street and Baltimore avenue was from fifteen to eighteen miles per hour. The automobile was coming south on Baltimore avenue. It carried headlights and the first intimation the riders of the sled had of its approach came from the glare of these lights.

There were obstructions at the northwest corner of the street intersection that shut off the view of Thirty-seventh street to the chauffeur until he reached a point about 100 feet north of the intersection. At that place he could have looked westward on Thirty-seventh street to a point about 130 feet from the crossing. Witnesses introduced by plaintiff say that the chauffeur, as he approached the crossing, looked straight ahead, did not heed the warning cries heard by every one in the vicinity and made no effort to reduce speed until the instant of the collision which occurred near the center of the intersection. The car struck the sled just back of plaintiff and swerved to the southeast corner of the streets where it stopped at a point fifty or fifty-five feet from the place of the

Rowe v. Hammond.

collision. Though plaintiff knew the automobile was coming and that a collision was imminent, he did not alter the course of the sled. He and other witnesses say that the sled was going too fast to be turned into Baltimore avenue and that any other alteration of its course would have been dangerous under the circumstances of the situation. Plaintiff was compelled to hold to a straight course and to depend on the care of the chauffeur for his safety. There was a manhole cover in the center of the street intersection and the place of the collision is fixed by the testimony of the witnesses at or close to this spot. The tires of the rear wheels of the automobile were protected by a network of iron chains and after the accident it was observed that these chains had cut grooves in the ice from a point fifteen or twenty feet north of the manhole, indicating that the rear wheels were at that point when the brakes first were set and that the setting of the brakes by the chauffeur and the collision practically were simultaneous events.

There is opinion evidence to the effect that the automobile could have been stopped in thirty-five or forty feet but we think the physical facts about which the witnesses seem to agree show that under the existing condition the car running at twenty miles per hour could have been stopped and, in fact, was stopped in a distance of fifty or sixty feet. The night was dark and misty but the evidence shows there was sufficient light to disclose the approach of the sled to the chauffeur had he looked in its direction when he emerged from behind the intervening obstructions. In addition to the two street lamps at this corner and the headlights of the automobile there were two lamps back at the corner of Wyandotte street. Defendant lays stress on the facts that the bobsled was low, that its riders were clad in dark clothing and that the icy background was of a somber color, as pointing to the

172 Mo. App.14

conclusion that the sled and its occupants were an inconspicuous and hardly distinguishable object, but this conclusion by no means is indisputable and is in conflict with the statement of eyewitnesses who say, in effect, that the object presented by the sled and its riders was conspicuous and that the noise of the warning cries was such that the chauffeur must have heard it.

The only evidence introduced by defendant was an ordinance of the city prohibiting coasting on the public streets. Plaintiff introduced an ordinance which forbids autoists from driving at a greater speed than twelve miles per hour in that part of the city.

We agree with counsel for defendant that at the time of his injury plaintiff was using the public street in a wrongful and unlawful manner. He had a right to go on the street for purposes of travel and it is immaterial whether he became a traveler in the pursuit of pleasure or for a more serious purpose. But the use of the public streets of the city for coasting is forbidden not only by the ordinances in evidence but by the rules of the common law which denounce such use as a nuisance *per se*. [Reusch v. Railway, 118 Ky. 369, 80 S. W. 116; Schultz v. Milwaukee, 49 Wis. 254, 5 N. W. 342; Taylor v. City, 64 Md. 68, 20 Atl. 1027.]

As is well said in the case first cited: "A city street is constructed for public travel. Any use of the street which renders it unsafe to the traveling public is a nuisance, for the traveling public have a right to pass back and forth upon it, and have a right to presume that it will be reasonably safe for this purpose. The large sled, loaded with several persons, rushing rapidly over the ice down the declivity in the dark, endangered the safety of every traveler upon the highway in its course. The purposes for which the street was made and for which it was used were inconsistent with such use. The sled, loaded as it was, and run over the ice down the declivity, gathering mo-

mentum as it went, was *per se* a nuisance. One who creates a nuisance, and is himself injured thereby, cannot recover.''

The cause of the action under consideration in that case was founded not on the humanitarian rule but on negligence to which contributory negligence or other contributing wrong of the plaintiff would be a complete defense. We have quoted from the opinion to support our conclusion that plaintiff was making a wrongful use of the street and, therefore, is in a position that would preclude him from recovering damages from defendant were this an action in which his own wrong could be a defense.

But the humanitarian rule does not exclude wrongdoers from its protection. It attaches no importance to the question of whose fault created or helped to create the peril that ripened into an injury. It does not go back of the fact of the existence of an imminent danger to a human being. That is the all-important fact and every preceding event is mere history. Finding a person imperilled by an instrumentality being operated by another the rule says to the latter: if you saw or should have seen the danger of your brother and had the means at your command of averting the danger, it was your duty to him to make reasonable use of such means for his protection and a breach of that duty resulting in his injury would be a wrong that would give him a cause of action against you.

Counsel for defendant recognize this rule but argue that inasmuch as plaintiff was a trespasser on the street—was using it in an unlawful manner—the chauffeur had no reason to anticipate his presence, was under no duty of keeping a lookout for him and, therefore, was not chargeable with the performance of any duty towards plaintiff until he had actual knowledge of his danger. [Citing Williams v. St. Joseph, 166 Mo. App. 299; Barney v. Railway, 126 Mo.

372; Sheehan v. Boston, 171 Mass. 296, 50 N. E. 543;
Reusch v. Mill Co., supra; Thomas v. Railway Co., 93
Iowa, 248, 61° N. W. 967; Doherty v. Ayer, 197 Mass.
241, 83 N. E. 677; Feeley v. City of Melrose, 91 N. E.
(Mass.) 306; Chase v. Railroad, 94 N. E. (Mass.) 377.]

And further it is argued, "no duty being owed to
the plaintiff to discover his peril, he cannot recover
on the ground that defendant might nevertheless have
seen him while discharging a general duty owed to
those rightfully on the street." [Barker v. Railway,
98 Mo. 1. c. 54; Carrier v. Railway, 175 Mo. 470; Frye
v. Railway, 200 Mo. 377; Degonia v. Railroad, 224
Mo. 1. c. 592; Rohback v. Railroad, 43 Mo. 187; Bell v.
Railway, 112 Mo. 1. c. 246; Elliott on Roads & Streets
(3 Ed.), sec. 1139; Kiley v. Kansas City, 87 Mo. 103;
Shearman & Redfield on Negligence (5 Ed.), sec. 8;
Faris v. Hoberg, 134 Ind. 1. c. 274, 33 N. E. 1028.]

If this were a case such as that considered by us
in Williams v. City, supra, where a trespasser on the
street claimed the right to recover damages for an in-
jury received from a defect in the street negligently al-
lowed to remain by the city, we would say that since
such an action necessarily would be founded on negli-
gence to which plaintiff's wrong would be a defense, he
could not recover, but this does not belong to that class.
Nor does it belong to the class of cases such as Barker
v. Railway, supra, in which the rule is applied that a
trespasser on private property, i. e., on a railroad
track at a place where the engineer is entitled, under
the humanitarian rule, to the benefit of a vigilant look-
out on the part of the engineer and is entitled to re-
cover damages only on proof that the engineer had ac-
tual knowledge of his danger in time to have saved
him by the exercise of reasonable care.

Plaintiff was not a trespasser in the sense in
which that term generally is employed. He was not
on private property and was not invading the prop-
erty rights of another. His wrong consisted not in

being in a place where he had no right to be, since he had the undoubted right to travel on Thirty-seventh street and to cross Baltimore avenue, but in exercising a lawful right—the right to travel the street for pleasure—in an unlawful manner. That the chauffeur owed him a duty under the humanitarian rule is certain and is conceded and we say that duty was not compressed within the limits of that owed. to a mere trespasser on private property whose presence in a place of danger the owner has no reason to anticipate. It is more consistent with our ideas of reason and humanity to say that the rights of plaintiff should be measured by the duty the chauffeur owed the public using the streets. He was running at high speed a heavy, powerful and, if improperly handled, a highly dangerous vehicle. He had the means at hand by which he could easily control the movements and speed of the car. He knew that he was likely to encounter other travelers at street crossings. In these times of varied and rapid vehicles of street transportation, it would seem that the duty of a chauffeur in approaching a crossing should compel him to maintain a vigilant lookout and to keep his car under control. He has no right to sit in arrogant security, conscious of being the possessor of superior power, and force others to give him a clear track on pain of death or serious injury. For a chauffeur to run a car at twenty miles an hour over a street intersection in a populous district without looking to right or left and without checking speed, would be so clearly negligent, so dangerous and so violative of every natural instinct of humanity as to partake of the nature of a wanton and willful act. The evidence of plaintiff tends to show that the chauffeur was guilty of such conduct and also that after he must have had knowledge of the approach of the sled he withheld, until too late, the saving motion of the hand, doubtless, in the belief that the sled would cross over ahead of the car. We hold the

learned trial judge gave proper expression to the law of the case in overruling the demurrer to the evidence and in instructing the jury to find for the plaintiff if they believed from the evidence that the defendant saw or should have seen the peril of plaintiff in time to have avoided the injury by the exercise of reasonable care.

The judgment is affirmed. All concur.