Belle Martin v. Julius B. Fehse, Sr., and Julius B. Fehse, Jr., Appellants.—55 S. W. (2d) 440.

Division One, December 20, 1932.

*Wilbur C. Schwartz* for appellants.

*Douglas H. Jones* for respondent.

FERGUSON, C.—An automobile owned by defendant J. B. Fehse, Sr., and being driven by his son, defendant, J. B. Fehse, Jr., struck and injured plaintiff, a pedestrian, as she was crossing Hickory Street in the city of St. Louis. Plaintiff brought this action for damages in the amount of $20,000. The case was tried in the Circuit Court of the City of St. Louis, and the verdict of the jury being for defendants, judgment was entered accordingly. Plaintiff's motion for a new trial was sustained and from the order of the trial court granting a new trial defendants bring this appeal.

The petition charges negligence under the humanitarian doctrine with other grounds of negligence also assigned. The defendants answered separately, the answer of the defendant, Fehse, Sr., being a general denial and that of defendant, Fehse, Jr., a general denial with a plea of contributory negligence. Defendants did not ask that any of the several assignments of negligence made in the petition be withdrawn. No instructions were offered or given on behalf of the plaintiff, but the court gave three instructions offered by defend-

ants. Plaintiff's motion for a new trial was sustained on the ground that the "court erred in giving Instruction No. 1 offered in behalf of defendants," which instruction is as follows:

"The court instructs the jury that if you find and believe from the evidence that the plaintiff walked or stepped out into Hickory Street between two parked automobiles that were parked on the south curbing of Hickory Street at the place mentioned in the evidence, and that she was negligent in so doing, if you so find, and if you further find that she negligently and carelessly permitted herself, after walking and stepping out between two parked automobiles, to step directly into the path of the automobile driven by Julius Fehse, Jr., and so close thereto that the defendant Julius Fehse, Jr., thereafter, could not by the exercise of the highest degree of care have stopped his said automobile or swerved the same, thus and thereby avoiding the collision mentioned in the evidence, and that this negligence of the plaintiff in so stepping out between two parked automobiles, if you so find she was negligent in so doing, was the direct and sole cause of the collision mentioned in the evidence and the plaintiff's injuries, if any, and that defendant Julius Fehse, Jr., was free from any negligence, then your verdict must be for the defendant."

Defendants (appellants) do not here question that a submissible case was made under the humanitarian doctrine. The sufficiency of the evidence is not involved and for the purposes of this opinion the following statement of the evidence will, we think, suffice. Hickory Street is an east and west paved street in the city of St. Louis. Plaintiff, an elderly lady, resided with her daughter at 936 Hickory Street, on the south side of that street and about midway of the block between Ninth Street, a north and south cross street, on the east, and Tenth Street, a north and south cross street, on the west. The automobile which struck plaintiff was a Ford roadster owned by Fehse, Sr., but at the time being driven by his son Fehse, Jr., who was accompanied by a young lady. They were the only persons riding in the car. There was testimony that Fehse, Jr., was at the time driving the car with his father's consent and engaged upon an errand for his father. Plaintiff was struck and injured about eight P. M., Sunday night January 2, 1927, as she was crossing Hickory Street on her way to a church situate on the north side of that street approximately opposite her residence, which was on the south side. We find evidence in the record tending to show that plaintiff paused at the south curb line at a point in front of her residence and looked first to the west to Tenth Street then east to Ninth Street and again to the west and as no traffic of any kind was moving either east or west she stepped into Hickory Street and walked directly toward the north side of the street; that she was facing north and intent upon her course across the street and did not again glance to either the

east or west; that she had thus proceeded some three or four steps into the street, or eight to twelve feet north from the south curb, when the Fehse automobile came from the west so fast that when she first saw it the car was so close upon her she could not avoid it; that the right front fender of the car struck her and knocked her down and the car ran over her causing the injuries complained of; that no horn was sounded or warning signal given of the approach of the car and she did not discover its approach until the instant she was struck; that the car continued without any slackening of speed to Ninth Street and turned onto that street where it was stopped and Fehse, Jr., who was driving the car came back to the scene of the accident and inquired concerning plaintiff's injuries. The driver, Fehse, Jr., stated the car was traveling twelve to fifteen miles an hour, and that he entered Hickory Street from Tenth Street, having driven north on Tenth Street he turned east on Hickory. There is evidence to the effect that after plaintiff had stepped into the street and started walking north across the street, the Fehse car turned off Tenth Street east into Hickory Street and that the speed of the car was not at any time slackened, the car swerved or horn sounded and that the point where plaintiff was struck was about midway of the block. The street was well lighted and a street light on the north side, opposite the point of accident was burning. Plaintiff and three witnesses, who claimed to have seen the accident, testifying on her behalf, say that there were no other automobiles or other traffic on Hickory Street except one automobile, standing, parked against the curb, and facing east, on the south side of Hickory Street from twenty to thirty feet west of the point from which plaintiff stepped from the sidewalk into the street. The evidence is such as to permit a reasonable inference that by the exercise of the highest degree of care the driver could have discovered plaintiff in the street, walking and facing north and apparently oblivious to the approach of his car in time to have stopped the car, sounded a warning or swerved the car and thereby have averted striking her. Defendants' version of the matter is stated by Fehse, Jr., and the young lady who was riding in the car. It is that there were several automobiles parked along the curb; that plaintiff stepped out from between two parked cars; that the young lady first saw plaintiff and called Fehse's attention to her; that he thereupon immediately sounded the horn, swerved the car to the north and applied the brake which caused the rear end of the car to skid to the right; that they did not know the car struck plaintiff and proceeded east but the young lady looking back saw a group of people in the street and they stopped at Ninth Street and returned to inquire.

Defendants' instruction, above set out, which the trial court held to be erroneous, advises the jury, in effect, that if they

find the facts as therein hypothesized plaintiff cannot recover under the humanitarian doctrine and the verdict must be for defendant. Under this instruction no duty whatsoever was imposed upon the driver of the automobile to take any action or do anything to avoid striking plaintiff until after she stepped "directly into the path of the automobile or so close thereto" that he could not *thereafter* in the exercise of the highest degree of care have averted striking her, whereas the driver's duty under the humanitarian rule began when he saw, or by the exercise of the highest degree of care could have seen, plaintiff walking toward the path of the car, apparently oblivious of its approach. The dictates of humanity required that he then use all means available to avert striking her, either by sounding a warning, stopping the car or changing its course, and under such circumstances he could not defer action until after plaintiff came "directly into the path of the automobile" or "so close thereto" that she was in immediate danger of being struck by it and any action he might then take be unavailing.

"Under the humanitarian rule, as we understand the reason and purpose of that rule, the driver of an automobile cannot supinely wait until the pedestrian takes the last step into the direct path of the automobile before acting to avoid injuring the pedestrian, but his duty to stop the automobile, or warn the pedestrian of impending danger, we think, arises upon the first appearance of such danger. The humanitarian doctrine is rendered abortive and ineffectual if it does not require the driver of an automobile to take reasonable means to avoid injury until the pedestrian takes the last step into the direct path of the automobile, after which step it is humanly impossible for any action to be taken by the driver of the automobile to avert the injury. The established law in this State respecting the duty of the driver of an automobile does not limit the zone of imminent peril to such narrow confines. [Hornbuckle v. McCarty, 295 Mo. 162, 243 S. W. 327, 25 A. L. R. 1508; Kinnison v. Weiss (Mo. App.), 261 S. W. 336; Hopfinger v. Young (Mo. App.), 179 S. W. 747; Rowe v. Hammond, 172 Mo. App. 203, 157 S. W. 880.]" [Burke v. Pappas, 316 Mo. 1235, 1244, 293 S. W. 142, 146.]

The instruction under examination improperly narrows, limits and restricts the operation of the humanitarian rule and permits the jury to find against plaintiff on that ground of negligence even though the driver could have averted striking plaintiff had he acted when he saw or by the exercise of the highest degree of care could have seen plaintiff walking toward the path of his automobile apparently oblivious of its approach. Under the humanitarian rule the conduct of the driver must be measured from the point and time when by the exercise of the highest degree of care he could have seen plaintiff, apparently oblivious of the approach of the automobile, about to enter into a place of danger.

■ A further criticism of the instruction, in its present form, is that while undertaking to advise the jury what facts, if found by them, would constitute a defense and bar recovery by plaintiff under the humanitarian doctrine it improperly emphasizes, and authorizes the jury to consider, plaintiff's negligence in that connection. That plaintiff is negligent in going into a place of danger or peril is immaterial in determining whether defendant was negligent for the humanitarian rule applies even though the person injured is negligent and regardless of such person's negligence in getting into a perilous position, seizes and operates upon the situation thereby created and then resulting. Contributory negligence of plaintiff not being a defense matter foreign and immaterial to a determination of the issues involved in the humanitarian doctrine was thus presented to the jury in that connection.

But while plaintiff's negligence is seemingly so closely interwoven with that part of the instruction hypothesizing facts which excuse defendant from liability under the humanitarian rule as to allow the jury to consider contributory negligence of plaintiff in determining the driver's negligence thereunder, it may be said that as the instruction is worded consideration of plaintiff's negligence is confined to the issue of whether it was the "direct and sole cause of the collision" and the driver "free from any negligence" as stated in the concluding part of the instruction. If so the jury is directed to return a verdict for defendants if they find that the driver was not negligent, in the manner therein above stated, that is, in failing to avoid the collision *after* plaintiff stepped "directly into the path of the automobile" or had placed herself in immediate and unavoidable danger of being struck. But, as we have attempted to point out, the driver's duty to act should not have been deferred to that time and the determination of his negligence should not have been restricted to a consideration of his conduct subsequent to such time for the duty to use all available means to avoid striking plaintiff arose when by the exercise of the highest degree of care he could have discovered her, apparently oblivious of the approach of the automobile, pursuing a course which would, if continued, bring her into the path the automobile was then traveling. While the instruction singles out and gives undue prominence to certain facts favorable to defendants it omits material and essential facts necessary to a determination of the issue of negligence under the humanitarian doctrine. Viewed from any angle or theory the instruction is confusing and well calculated to mislead the jury. [Linders v. Peoples Motor Bus Company, 326 Mo. 695, 32 S. W. (2d) 580; Causey v. Wittig, 321 Mo. 358, 11 S. W. (2d) 11.]

We think the trial court correctly ruled the motion for a new trial and the order granting a new trial is therefore affirmed and the cause remanded. *Sturgis* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All of the judges concur.