LUCILLE BURKE, A Minor, by MARY BURKE, Her Next Friend, Appellant, v. JAMES PAPPAS and PETER PAPPAS, Doing Business as STANDARD MEAT & GROCERY COMPANY.—293 S. W. 142.

Division One, April 11, 1927.

1. **HUMANITARIAN DOCTRINE: Contributory Negligence as Defense: Instruction.** Under the humanitarian doctrine the injured party may recover for personal injuries although negligent at the time of receiving them. The contributory negligence of the injured party is not a defense or bar to recovery by plaintiff under the last-chance rule. Therefore an instruction for defendant that if the pedestrian stopped immediately in front of defendant's automobile while it was in motion and so close thereto as to make it impossible for the driver to have given an audible warning or to stop in time to avoid striking her, and that she "was negligent in so doing, and that such negligence, if any, directly contributed to cause the accident, your verdict must be for defendant and against the plaintiff", is erroneous, and its giving is reversible error.

2. **———: Place of Peril: Obliviousness: Automobile: Path of Car.** The duty of the driver of an automobile under the humanitarian doctrine may arise before the pedestrian is in its direct path. On the contrary, it is his duty to stop it or give warning of its approach when he observes, or by the exercise of ordinary care should observe, the pedestrian walking heedlessly towards its path and apparently oblivious of danger. Where the driver observes, or by the exercise of ordinary care could observe, that a pedestrian, about to cross an intersecting street, does not appreciate his danger, he should proceed on the theory that the pedestrian may continue in his course heedless of his peril, and bring his automobile under control, so that he may stop, if necessary, before striking him, and not wait until the pedestrian is in the path of the car to exercise such precaution. The zone of imminent peril cannot be limited to the path of the car, but the duty of the driver to avoid striking the pedestrian begins to arise upon the first appearance of danger.

3. **———: Equal Care: Instruction.** In an action for personal injuries received when struck by an automobile in which plaintiff grounds her right to recover on the humanitarian doctrine, an instruction telling the jury that "defendants were not required to exercise any greater degree of care to avoid striking plaintiff than plaintiff was required to exercise to avoid being struck, but each of them had equal rights in the street at the time of the accident," in effect directs the jury to measure and limit defendants' negligence by plaintiff's negligence, and is confusing and misleading, and may lead them to understand that plaintiff is barred from recovery under said rule if they believe her to have been negligent at the time of her injury.

4. **———: ———: Pedestrian and Driver of Automobile: Ordinary and Utmost Care: Trial Theory.** Where plaintiff by her petition and instructions tries and submits her case on the theory that the driver of the automobile which struck her was bound to exercise only ordinary care, she cannot be heard to urge on appeal that the statute (Laws 1921, Ex. Sess., p. 91, sec. 19) made it the duty of the driver to exercise the highest degree of care, but imposed no duty upon a pedestrian injured by the automobile.

Having tried and submitted her case upon the theory that both were bound to exercise ordinary care, she is on appeal bound by her trial theory.

Corpus Juris-Cyc. References: **Appeal and Error,** 4 C. J., Section 2609, p. 701, n. 49.  **Courts,** 15 C. J., Section 514, p. 1088, n. 22.  **Motor Vehicles,** 42 C. J., Section 778, p. 1032, n. 19; Section 1139, p. 1277, n. 16.  **Negligence,** 29 Cyc., p. 532, n. 31; p. 655, n. 37 New.

Appeal from Circuit Court of City of St. Louis.—*Hon. John W. Calhoun,* Judge.

REVERSED AND REMANDED.

*Mark D. Eagleton, Everett J. Hullverson* and *Harry S. Rooks* for appellant.

(1) The giving of Instruction 9 was error. (a) Plaintiff submitted the case to the jury solely on the humanitarian doctrine, and there was no issue of contributory negligence for the jury to decide, because contributory negligence is not a defense under the humanitarian doctrine. The instruction submitted contributory negligence as a defense, which was error, and "highly prejudicial." Spindler v. Wells, 276 S. W. 388; Yakoboski v. Wells, 253 S. W. 72; Nipper v. Railroad, 145 Mo. App. 224; Jackson v. Rys. Co., 232 S. W. 753; Evans v. Klusmeyer, 301 Mo. 352. (b) This instruction, in express terms, is a contributory negligence instruction. It cannot be construed as a defendant's humanitarian doctrine instruction, because it would mean that the defendant's duties under the humanitarian doctrine do not arise until the plaintiff is in the actual path of the on-coming vehicle. The instruction entirely ignores the defendant's duty under the humanitarian doctrine to give warning to prevent the plaintiff from stepping into the path of the vehicle, and to begin to stop before the pedestrian actually does step into the path of the vehicle. The zone of peril under the humanitarian doctrine is not limited to the immediate path of the approaching vehicle. Zumwalt v. Railroad, 266 S. W. 717; Maginnis v. Railroad, 268 Mo. 667; Murrell v. Railroad, 279 Mo. 92, 112; Wolf v. Railroad, 212 Mo. App. 26, 47; Hornbuckle v. McCarty, 295 Mo. 162; Hopfinger v. Young, 179 S. W. 747. (2) The giving of Instructions numbered 5, 6 and 7 was error because: (a) These instructions all submit contributory negligence for the jury's decision, although it was not a defense. Such instructions can serve no legitimate purpose in a humanitarian-doctrine case. Their inevitable effect is to confuse and mislead the jury. Thornton v. Stewart, 240 S. W. 504; Smith v. Rys. Co., 208 Mo. App. 148; Jackson v. Rys. Co., 232 S. W. 752. (b) It is error to inject such false issues into the case. Strother v. Milling Co., 261 Mo. 1, 22. (3) The giving of Instruction 8 was error be-

cause: It is misleading, argumentative and an unwarranted comment on the evidence. It led the jury to believe that the automobilist is only required to observe the same precautions to prevent it striking a pedestrian that a pedestrian is required to observe to prevent being struck by the automobile, whereas, even the common law requires the automobilist at least to do what an ordinarily careful and prudent person while driving an automobile under similar circumstances would do, and only requires that the pedestrian act as an ordinarily careful and prudent pedestrian would act under similar conditions. These precautions are manifestly not the same. The comparison of their duties as being equal is erroneous, unfair and highly misleading and confusing to the jury; the fact that the plaintiff in this case is not *sui juris* further magnifies the error. And, since the plaintiff's case was submitted solely on the humanitarian doctrine, the error and misleading effect of the instruction is emphasized. The duties and responsibilities under the humanitarian doctrine of the automobilist and the pedestrian are not in any sense the same. If they were the same, the humanitarian doctrine manifestly would not exist at all. And, further, when the collision occurred, the statute (Laws 1921, Ex. Sess. sec. 19, p. 91) required the automobilist to exercise the highest degree of care. Tutie v. Kennedy, 272 S. W. 122.

*Brackman, Hausner & Versen* for respondents.

(1) Plaintiff limited her right to recover under the humanitarian theory to negligence on the part of the defendants after she occupied a position of imminent peril of being struck. She fixed the danger zone as in the immediate path of the automobile. The court thereupon gave Instruction 9 as the direct converse or opposite of plaintiff's theory as embodied in Instruction 1, which it had the right to do. Meeker v. Street Ry. Co., 178 Mo. 173; Heinzle v. Street Ry. Co., 213 Mo. 102; Harmon v. United Railways Co., 163 Mo. App. 442. (2) A judgment should not be reversed unless error was committed materially affecting the merits of the action, and it is incumbent upon appellant to show error on the part of the court and that she was prejudiced thereby. Sec. 1513, R. S. 1919; Wellman v. Street Ry. Co., 219 Mo. 136; Morgan v. Wabash, Railroad, 159 Mo. 262. (3) Plaintiff tried her case upon the theory that defendant was required to exercise ordinary care to avoid injuring her. She cannot now be heard to complain on appeal that error was committed by the court in failing to instruct the jury that the defendant was required to exercise the highest degree of care. Parties are bound by the theories adopted by them at the trial. Harper v. Morse, 114 Mo. 317; Boyd v. Railroad, 236 Mo. 54; Barr v. Hayes, 172 Mo. App. 592. (4) The evidence

was insufficient to submit the case to the jury on the humanitarian theory as pleaded and as submitted by plaintiff's instruction. Murray v. Wire & Iron Co., 238 S. W. 836; Wilson v. Flour Mill Co., 245 S. W. 205; Meeker v. Street Ry. Co., 178 Mo. 173; Heinzle v. Street Ry. Co., 213 Mo. 102; Morgan v. Wabash Railroad, 159 Mo. 262.

SEDDON, C.—Plaintiff, a minor about seventeen years of age, sued to recover damages resulting from personal injuries alleged to have been caused by the negligent operation of an automobile owned and operated by defendants in their business upon a public street in the city of St. Louis. Plaintiff, a pedestrian, was injured at the intersection of Franklin Avenue and Sixteenth Street about 5:30 P. M. on December 14, 1922. The petition charges defendants with several acts of negligence, but the cause was submitted by plaintiff to the jury solely upon the humanitarian, or last-chance, doctrine of negligence, the specification of which negligence, as pleaded in the petition, is as follows: "That the defendants, their agent and servant, did negligently and carelessly fail to stop or slacken the speed of said automobile, or turn same aside, or give a timely warning of the approach of said automobile, after they saw, or by the exercise of ordinary care on their part could have seen, the plaintiff in a position of imminent peril to which she was oblivious, in time thereafter by the exercise of ordinary care with the means and appliances at hand and with safety to persons riding in said automobile to have stopped the same, or to have sufficiently slackened the speed thereof, or to have turned the same aside, or to have given a timely warning of the approach of said automobile, and thus and thereby avoided striking or injuring the plaintiff." The answer is a general denial and a plea of contributory negligence in that it is charged in the answer that plaintiff negligently failed to look and to listen for approaching vehicles, and that "plaintiff negligently and carelessly failed to stop or alter her course after she saw, or by the exercise of ordinary care could have seen, defendants' automobile in motion and approaching in time, by the exercise of such care, to have avoided colliding therewith." The reply is a general denial.

Plaintiff was walking in a westerly direction on the south side of Franklin Avenue, using the usual cross-walk for pedestrians. She was accompanied by a girl friend, who is about the same age as plaintiff. Franklin Avenue is an east-and-west street, and Sixteenth Street is a north-and-south street, and the roadway of each street is about 40 feet wide. The collision occurred after dark, but the evidence tends to show that the intersection was fairly well lighted. The streets were wet from a recent rain, and there was a light drizzle of rain falling at the time of the collision. There is a street-railway

track along Franklin Avenue, located about the middle of the roadway.

Plaintiff testified that she and her girl companion were crossing from the east to the west side of Sixteenth Street at its intersection with Franklin Avenue, on the public crossing on the south side of Franklin Avenue; plaintiff was on the north and her friend was on the south, or plaintiff's left, side; when plaintiff left the curbing on the east side of Sixteenth Street, she looked to see if there was any approaching traffic; she first looked north and saw an automobile about ten feet north of Franklin Avenue, traveling at a slow rate of speed, and plaintiff thought she could cross before the automobile would reach the intersection; she then looked south, and did not look north again until she reached the path of the automobile, when she saw the glare of the headlights, and the next she knew the automobile had hit her, throwing her about ten feet to the northwest; she was in the middle of Sixteenth Street when she was struck and was walking on the crossing used by pedestrians in crossing Sixteenth Street; when she saw the glare of the headlights, the automobile was "almost on top of her," and "it was hardly a foot away;" there was a west bound street car, which had stopped on the east side of Sixteenth Street just prior to the collision, and the automobile passed in front of the street car without waiting for the street car to start; after the automobile struck plaintiff, it went about ten feet farther and parked at the southwest curbing; it was dark at the time, but the street lights were lit; she took about two steps off the curb when she looked north and saw defendants' automobile, which was then about ten feet north of Franklin Avenue, coming south; the automobile had not reached Franklin Avenue; plaintiff did not see the automobile again until it struck her; the lights on the automobile were very dim; the first plaintiff knew was that "the automobile was right on top of me;" after having seen the automobile at the northwest corner, plaintiff did not see it again until "it was right on top of her," and in the meantime she had been looking south; there were no automobiles coming from the south; plaintiff did not hear a horn sounded; the radiator of the automobile struck her on the hip and arm, and the automobile went ten feet after striking her.

Plaintiff's girl companion testified that she and plaintiff were walking westwardly on the south side of Franklin Avenue until they reached Sixteenth Street; before witness stepped into Sixteenth Street, she looked both east and west and also looked south, and then stepped off the curb and looked north and "didn't see anything coming at all;" plaintiff was on witness's right-hand side; witness did not see the automobile until it was almost upon them; did not believe it was more than a foot away when she saw it; witness and plaintiff were then in the middle of Sixteenth Street; there was no other traffic coming

from either the south or the north at the time; did not notice anyone else crossing the street at the time; it was a dark night, but the streets were lighted and it was fairly light at the time; witness felt the impact of the automobile and knew that it was of terrific force; witness was knocked a few feet and was then caught by one of the wheels; when witness got upon the sidewalk, the automobile was then ten or fifteen feet from the point of collision; plaintiff was hit first and was thrown against witness; witness did not hear any horn sounded; her hearing was good on that day; when witness and plaintiff reached the curb, they quit talking and looked around to see if there was any traffic approaching; they stopped talking after they reached the curb; did not see the automobile at that time; they walked about four or five feet to the middle of Sixteenth Street; witness didn't look any more from that time on; witness believed she walked about four or five feet before she was struck; witness and plaintiff were in the middle of the street, not on the west side, when they were struck; the automobile went ten or fifteen feet farther after striking witness; plaintiff was thrown about eight or ten feet into the air and fell; it was "pretty still around the place of the accident;" witness didn't hear the roar of the motor until the automobile was almost upon them, about a foot away.

The driver of the automobile, defendants' employee, was offered as a witness by plaintiff. He testified that, on December 14, 1922, about 5:30 P. M., he was driving defendants' automobile south on the west side of Sixteenth Street, well over toward the west curb, and, as he approached Franklin Avenue, he saw a street car going west, which car later passed, and then he continued south across Franklin Avenue; when he was about half way across Franklin Avenue, or about 20 feet from the south curb, he saw some people crossing from the east to the west side of Sixteenth Street at the south crossing of Franklin Avenue; witness blew the Klaxon horn of the automobile, and the people stopped; thereafter, he continued to look to the east and west and did not again see these people crossing until the automobile struck plaintiff; did not see plaintiff walk west after she stopped and, when plaintiff stopped, she was about two or three feet east of the path of the automobile; the automobile moved in a straight line, southwardly, and, during the time it was crossing Franklin Avenue, the automobile moved at a rate of speed of about two miles per hour; witness made the stop in possibly a foot after striking plaintiff, and made the stop by putting on the brakes hard; the automobile skidded, but witness succeeded in making the stop within one foot; it was drizzling rain at the time and there were drops of rain on the windshield of the automobile; did not know in what direction the plaintiff was looking after witness saw her stop, when the automobile was twenty feet from plaintiff; witness "could have stopped within

two feet any time after seeing the plaintiff had I cared to do so;" when witness got to Franklin Avenue, at the north side, he stopped the automobile to permit the street car to pass, before witness attempted to cross Franklin Avenue; witness started across in low speed and never changed that speed at any time before the accident; witness blew the horn at the north side of Franklin Avenue, and blew it again in the middle of Franklin Avenue, to warn the people who were crossing on the south side of the street; when witness blew the horn, the people stopped approximately in the middle of Sixteenth Street, and when they stopped, witness proceeded; when witness "got over there, I found these girls in front of my car; I did not see them again until they were right in front of the machine; as soon as I saw these girls in front of my machine, I put on my brake and jammed it down tight; I stopped within approximately one foot after striking the plaintiff;" the automobile did not knock plaintiff in the air; when witness stopped the automobile, the plaintiff fell on the ground in front of the automobile, the automobile had two electric headlights, which were burning brightly at the time. Defendants introduced the testimony of a single witness, who admitted that he was a friend and neighbor of the driver of the automobile. He testified that he was walking on Sixteenth Street about twenty feet from the corner, at the time of the collision, and "could see everything;" the girls were not on the crosswalk, but were "cutting the crossing" and had started diagonally across Sixteenth Street, traveling from the southeast to the northwest corner of the intersection, when they suddenly changed their course and started to walk west; witness heard the driver of the automobile sound the horn when in the middle of Franklin Avenue, and the two girls then stopped; witness saw the automobile before the street car crossed Sixteenth Street, and the automobile stopped to let the street car pass; after the street car passed and the automobile started again, it was about 75 feet from the girls; the girls moved about 30 feet across the intersection before they were struck, and during that time the automobile moved about 75 feet until it struck the girls; the accident did not happen in the middle, but on the west side, of the street; there was nothing to obscure the view of the driver of the automobile; the lights on the automobile were burning brightly; the girls were not paying any attention to traffic; the first time the girls looked, they were about three steps off the curb, and the automobile was then about to start across Franklin Avenue; the second time the girls looked, they were in the middle of the street, and then they stopped and looked again; after that, they continued on about two steps and were struck; after the accident, the chauffeur stopped in practically no space at all, "you might say as much space as a dime;" the chauffeur continued at the same speed at which he had been traveling; after the automobile stopped, one of the girls was un-

der the machine, but witness did not know whether she was the plaintiff or her companion.

Medical testimony was adduced tending to show that plaintiff had suffered serious injuries.

Plaintiff submitted her case to the jury by an instruction hypothesized solely upon the humanitarian, or last-chance, doctrine. Certain instructions to the jury were given at request of defendants and by the trial court of its own motion. Ten of the jurors returned a verdict in favor of the defendants. After unsuccessfully seeking a new trial, plaintiff was allowed an appeal to this court. We take jurisdiction of the appeal because of the demand of the petition for $15,000 as the amount of plaintiff's damage.

Plaintiff assigns error in the giving of certain instructions. The trial court, of its own motion, by Instruction No. 9 instructed the jury "that if you find and believe from the evidence that the plaintiff in this case stepped immediately in front of defendants' automobile while the same was in motion and so close thereto as to make it impossible for the driver of the said automobile to have given an audible warning of its approach or to stop the same in time to avoid striking the plaintiff. and if you further find that *the plaintiff was negligent in so doing and that such negligence, if any, directly contributed to cause the accident, then your verdict must be for the defendants and against the plaintiff.*" (Italics ours.)

Plaintiff submitted her case to the jury solely upon the humanitarian doctrine, under which doctrine, as recognized and established in this State, recovery may be had by the injured party although such party may have been negligent at the time of the injury. In other words, it is the established law in this State that contributory negligence of the plaintiff is not a defense or bar to a recovery by plaintiff under the humanitarian rule. The giving of an instruction in almost identical language in a case submitted under the humanitarian rule was held to be reversible error by Division Two of this court, in Spindler v. Wells, 276 S. W. 387, 388, wherein it is said: "The second paragraph [of the instruction] is the one attacked by plaintiff on the ground that it ignores plaintiff's case under the humanitarian rule and directs a verdict for the defendant if plaintiff was guilty of contributory negligence, when plaintiff was entitled to recover in spite of his own negligence if his peril was apparent to defendant's servants operating said street car in time for them to have avoided injuring him by stopping the street car, slackening its speed, or giving timely warning of its dangerous proximity. Instructions 1 and 7 are thus in conflict as well. We think the assignment is well founded." Similar instructions were held to be highly prejudicial, and hence to constitute reversible error, in Yakoboski v. Wells, 253 S. W. 72; Jackson v. Railways Co., 232 S. W. 752; and

Nipper v. Railway Co., 145 Mo. App. 224, 231, in which latter case, the court aptly remarked: "Though the instructions correctly state a familiar rule of negligence law, they are confusing and misleading as applied to the issues of the present case. They do not restrict, as they should, the scope of the defense of contributory negligence, but improperly extend it to include negligence under the humanitarian rule. . . . If such were a correct statement of the law, we would have no 'humanitarian doctrine.' The error was clearly prejudicial and requires that the judgment be reversed and the cause remanded."

Respondents claim, however, that said Instruction No. 9 is but the converse of plaintiff's Instruction No. 1, by which she submitted her theory of recovery to the jury. It is insisted that plaintiff, by her own instruction, limited her right to recover upon the theory that the negligence of defendants arose *only after plaintiff occupied a position of imminent peril of being struck and injured,* which is to say, *only after plaintiff was in the direct path of the automobile.* Hence, it is argued that the trial court committed no reversible error in the giving of Instruction No. 9 which (conversely) told the jury, in effect, that defendants were not liable if plaintiff stepped immediately in front of the automobile, and so close thereto as to make it impossible to avoid striking and injuring her. Respondents insist that plaintiff cannot complain of an instruction which is the converse of her own instruction, and that the error, if any there be, in Instruction No. 9 was invited by the theory of defendants' negligence under the humanitarian rule submitted by plaintiff in her own instruction. Plaintiff's Instruction No. 1 required the jury to find that "before said automobile struck plaintiff, the plaintiff became and was in a position of imminent peril of being struck and injured thereby, and was oblivious of such peril, and that said chauffeur saw or by the exercise of ordinary care could have seen plaintiff in such position of imminent peril, and that she was oblivious thereof (if you so find the facts to be), in time for said chauffeur thereafter, by the exercise of ordinary care . . . to have stopped said automobile or given an audible warning to plaintiff of its approach," etc. We cannot (as respondents would have us do) construe the meaning of plaintiff's instruction to be that plaintiff was in a position of imminent peril only when, and not until she stepped into the direct path of the automobile. It was the duty of defendants' chauffeur, under the humanitarian rule, to have stopped the automobile or to have given the plaintiff warning of its approach, when he observed, or by the exercise of ordinary care should have observed, the plaintiff walking heedlessly toward the path of the automobile and apparently oblivious of danger. His duty did not first arise at the very instant plaintiff stepped into the direct path of the automobile, for we think that plaintiff's danger, or peril, became imminent (as respects the duty of the chauffeur to have used

reasonable means to avoid injuring her) when she left the curbing on the east side of Sixtcenth Street and proceeded to walk westwardly across the street intersection, apparently oblivious of the nearness of the approaching automobile. The duty of the driver of an automobile toward a pedestrian is thus clearly stated in Standard Oil Company v. McDaniel, 280 Fed. 993, 995: "Where the driver of a truck observes, or should observe, a person about to cross in front of him, and it is reasonably apparent that he does not appreciate that danger is near, the driver should employ all reasonable means in his power to avoid injuring him. He should proceed on the theory that the pedestrian may continue in his course heedless of his peril, and therefore should bring his vehicle under control so that he may stop, if necessary, before striking."

Under the humanitarian rule, as we understand the reason and purpose of that rule, the driver of an automobile cannot supinely wait until the pedestrian takes the last step into the direct path of the automobile before acting to avoid injuring the pedestrian, but his duty to stop the automobile, or warn the pedestrian of impending danger, we think, arises upon the first appearance of such danger. The humanitarian doctrine is rendered abortive and ineffectual if it does not require the driver of an automobile to take reasonable means to avoid injury until the pedestrian takes the last step into the direct path of the automobile, after which step it is humanly impossible for any action to be taken by the driver of the automobile to avert the injury. The established law in this State respecting the duty of the driver of an automobile does not limit the zone of imminent peril to such narrow confines. [Hornbuckle v. McCarty, 295 Mo. 162; Kinnison v. Weiss, 261 S. W. 336; Hopfinger v. Young, 179 S. W. 747; Rowe v. Hammond, 172 Mo. App. 203.] The language and theory of plaintiff's Instruction No. 1 did not justify the court in giving, of its own motion, as the converse of plaintiff's instruction, the erroneous Instruction No. 9, which plainly authorized the jury to find for defendants if they believed that the negligence of plaintiff contributed to her injury; nor was the error in giving Instruction No. 9 invited or brought about by the language or theory of plaintiff's instruction.

Appellant assigns error in the giving by the court, of its own motion, of Instruction No. 8, which told the jury that "the defendants were not required to exercise any greater degree of care to avoid striking the plaintiff than the plaintiff was required to exercise to avoid being struck, but that each of them had equal rights on the street at the time of the accident, and that the only degree of care required of the defendants in this case was the same degree of care that an ordinarily careful and prudent person driving an automobile under the same or similar circumstances would have been required to exercise."

Appellant urges that the instruction is argumentative and was highly prejudicial to plaintiff, in that the law (especially when recovery is sought solely upon the humanitarian doctrine) does not define the pedestrian's duty in the terms, or by the measure, of what the driver of an automobile must do under the existing circumstances, and vice versa. It appears to us that, inasmuch as the instruction in substance and effect told the jury that the duties of plaintiff and defendants were equal under the circumstances and that they had equal rights upon the street, the jury may have understood the instruction to mean that plaintiff could not recover under the humanitarian doctrine if plaintiff and defendants' chauffeur were both negligent. In other words, the effect of the instruction, as we read it, was to measure or limit defendants' negligence by plaintiff's negligence. As we understand the humanitarian doctrine, as established in this state by juridical opinion, the defendants' negligence under that doctrine, or rule of law, is not to be measured or limited by the plaintiff's negligence, for the palpable reason that, under the humanitarian doctrine, the negligence of a plaintiff will not bar him from recovery if it is shown or proven that defendant, by the exercise of ordinary care on his part, might have avoided the consequences of the plaintiff's negligence. To say the least, we think that the Instruction No. 8, given by the court of its own motion, may have been confusing to the minds of the jury and may have led them to understand that the plaintiff is barred from recovery under the humanitarian rule because they believed plaintiff to have been negligent at the time of her injury.

As an additional reason why Instruction No. 8 is misleading and erroneous in making comparison of the respective duties of plaintiff and defendants, appellant urges that the statute (Laws 1921, Ex. Sess., sec. 19, p. 91), in force and effect at the time of the collision, made it the duty of the driver of a motor vehicle to exercise the highest degree of care, whereas no such duty is imposed by law upon the pedestrian. We are not unmindful of the statute. It appears from the record, however, that plaintiff, by her pleading and her instructions, tried and submitted her case upon the theory that defendants' chauffeur was bound to exercise merely ordinary care. Appellant did not submit her case upon the theory that the chauffeur was bound to exercise the highest degree of care, but elected to submit her case upon the theory that the driver of the automobile was bound to exercise ordinary care, as at common law. Having tried and submitted her case upon the theory of the duty imposed upon the driver of the automobile by the common law, rather than by the statute, appellant must be held to the theory adopted by her on the trial. [Hill v. Drug Co., 140 Mo. 433; Taylor & Sons Brick Company v. Railway Co., 213 Mo. 715.] Had appellant, by her pleadings and instructions, tried and submitted her case under the statute rather than upon the common

law, we think the point now made by her on appeal would be well taken. But regardless of whether the giving of Instruction No. 8 constitutes reversible error, we believe that prejudicial and reversible error was committed in the giving of the court's Instruction No. 9.

Criticism is made of instructions numbered 5, 6 and 7, given on behalf of defendants, and, while we think that those instructions are not free from criticism upon the ground that they are confusing and conflict with, and are contradictory of, other instructions given to the jury, yet we find it unnecessary herein to discuss such instructions, inasmuch as the judgment must be reversed and the cause remanded because of reversible error in the giving of Instruction No. 9. Doubtless, upon a retrial, the instructions now complained of by appellant will be redrafted so as to obviate the criticism leveled against them.

The judgment *nisi* is accordingly reversed and the cause remanded for retrial. *Lindsay, C.,* concurs.

PER CURIAM:—The foregoing opinion by SEDDON, C., is adopted as the opinion of the court. All of the judges concur, except *Gantt, J.,* not sitting.