IRA TAYLOR, RESPONDENT, v. C. C. KELDER, APPELLANT.—88 S. W. (2d) 436.

Kansas City Court of Appeals. November 12, 1935.

*Culver, Phillip, Kaufmann & Smith* and *Ronald S. Reed* for respondent.

*Brown, Douglas & Brown* for appellant.

REYNOLDS, C.—From an adverse judgment in the Circuit Court of Buchanan County for $5000 in favor of the plaintiff for injuries alleged to have been received by plaintiff on account of the negligence of the defendant under the humanitarian rule in the operation and management of his motor car, by reason of which he ran the same into and upon plaintiff, on the intersection of Mitchell Avenue and Twenty-second Street in the city of St. Joseph, Missouri, on or about March 31, 1934, seriously and severely injuring him, the defendant prosecutes this appeal.

The petition alleges both primary negligence and negligence under the humanitarian rule. Inasmuch as the cause was submitted to the jury on the charge of negligence under the humanitarian rule only, it is necessary to set out only the allegations of the petition presenting such charge, which are as follows:

"Plaintiff further states and for his cause of action that on or about the 31st day of March, 1934, the defendant, C. C. Kelder, was driving and operating his automobile on and along 22nd Street in said City of St. Joseph, Buchanan County, Missouri, in a northerly direction and approaching, entering and crossing the intersection of Mitchell Avenue; that the plaintiff herein was at said time and place upon the part of said 22nd Street traveled by automobiles and vehicles and not upon any sidewalk, and was crossing said 22nd Street on the north side of the intersection of said Mitchell Avenue from the west side of 22nd Street to the east side, and at said time and place was in the path of said approaching automobile and in a position of imminent peril and where he was likely to be struck by said automobile, which at said time was approaching the plaintiff from the south, and that he was oblivious of his peril; that the defendant herein saw, or by the exercise of the highest degree of care on his part could have seen, the plaintiff upon said traveled portion of said 22nd Street crossing said intersection in the path of said automobile and in a position of

imminent peril and oblivious of his peril in time thereafter by the exercise of the highest degree of care on the part of the defendant to have warned and to have avoided striking and injuring the plaintiff with said automobile, but that the defendant carelessly and negligently failed to sound any horn or to give the plaintiff any warning of the approach of said automobile, and carelessly and negligently failed to stop said automobile or to slow the same or to turn said automobile to one side to prevent injuring plaintiff, and carelessly and negligently failed to look where he was driving or to ascertain whether there were any pedestrians upon said traveled portion of said street in the path of said automobile, and carelessly and negligently drove said automobile at a high and dangerous rate of speed, to-wit, at a speed of more than twenty miles an hour and carelessly and negligently failed to apply any brakes on said car to slow or stop said automobile, and carelessly and negligently failed to turn said automobile to one side, and in consequence of the carelessness and negligence of the defendant as herein stated the said automobile so driven and operated by him, with great force and violence ran against, upon and over the plaintiff and injured him as hereinafter stated.

"That the defendant at said time and place carelessly and negligently failed to exercise the highest degree of care to keep his said automobile under reasonable control; that the defendant carelessly and negligently failed to exercise the highest degree of care to maintain a reasonably sufficient lookout; that the defendant failed to exercise the highest degree of care to give a reasonably sufficient warning; and though the plaintiff was in a position of peril or coming or going into a position of peril and said defendant knew or by the exercise of the highest degree of care could have known of the same in time, by the exercise of the highest degree of care, in the use of the means at his command and with reasonable safety to himself and the passengers in his car, and his car, to have stopped his automobile or sufficiently slackened its speed or to have turned it to one side or given reasonable warning, yet, he negligently failed so to do."

The answer of the defendant admitted that a collision occurred between plaintiff and the automobile driven by defendant but denied each and every other allegation of the petition. It presented a further plea of contributory negligence as follows:

"Further answering, the defendant states that at the time of the accident complained of plaintiff was guilty of negligence in the following respects, to-wit: that he carelessly and negligently failed to watch where he was walking and carelessly and negligently failed to take any precautions to look out for his own safety; that he carelessly and negligently stepped into the side of the defendant's automobile, so quickly and unexpectedly that the defendant was unable, in the

exercise of the highest degree of care on his part, to avoid colliding with him; that the plaintiff carelessly and negligently was proceeding upon the street when he was in such physical condition that he was unable to take care of or protect himself against danger, or to look out for his own safety; and that plaintiff's negligence as above set out, contributed directly to cause the injuries sustained by him, if any.''

Twenty-second Street and Mitchell Avenue are public streets in the city of St. Joseph, Missouri, intersecting each other. Twenty-second Street is an arterial highway. On the evening of March 31, 1934, at about 7:30 o'clock, the plaintiff, a man of about fifty-nine years of age, was walking east on the north side of Mitchell Avenue. Upon reaching the northwest corner of the intersection of Twenty-second Street and Mitchell Avenue, he looked north and south to see if any cars were approaching from either direction. He saw a car to the north about one block away and noticed the lights of a car coming from the south about two hundred feet away. After looking, he proceeded to cross the intersection toward the northeast corner thereof, walking in the street and not upon the sidewalk. He did not look to the south again until he reached a point about three feet west of the northeast corner of the intersection and just before he reached the northeast corner thereof. From this point, he looked and saw an automobile coming from the south right upon him, from eight to ten feet away. He attempted to lean forward and step upon the sidewalk; and, as he endeavored to do so, his right leg and hip were struck by the right fender of defendant's car with such force as to injure him seriously and severely. He heard no warning or signals from the car as it approached him. He could have seen it if he had looked in the direction from which it came, and there was nothing between him and the car to prevent the driver thereof from seeing him. In fact, the defendant testified that he did see him when defendant was quite a distance away, nearly one block south of the intersection. At the time of the accident, it was dark; but the intersection was fairly well lighted; and defendant had a clear view of it and of pedestrians thereon. The defendant testified that he was traveling at the rate of fifteen to twenty miles per hour as he approached the intersection and that, as he came upon the intersection, he sounded his horn and slowed down and traveled slowly across it. There was other evidence that he was traveling at twenty to twenty-five miles per hour.

There was evidence tending to show that the street paving was dry and that the defendant's car was in good condition for operation and use in travel. The defendant, in his testimony upon the trial, stated that, when he was quite a distance south on Twenty-second Street, he first noticed plaintiff walking across the street; that he thereupon slowed down his car; that, when plaintiff reached about the middle of Twenty-second Street, he turned back and went in the

direction from which he came and got on the curb; that, about the time defendant's car got even with the curb line, plaintiff staggered back and collided with the car; that at such time his car was close to what is termed the pedestrian lane; that he undertook to turn his car toward the center of the street just before he struck the plaintiff; and that, as he came up Twenty-second Street, his car was about a car's width from the curb line on the east side of the street.

There was evidence tending to show that the defendant's car could have been stopped in from twenty-eight to thirty-two feet when traveling at twenty-five miles per hour, in eighteen to twenty feet when traveling at eighteen miles per hour, and in twenty-two to twenty-five feet when traveling at twenty miles per hour but that it would continue to roll until the brakes took effect.

Dr. Gregg Thompson, who was called to administer to the plaintiff at the hospital, found him semi-conscious, with fracture of the left wrist, contusion over the right eye and over the right front of his forehead and contusion over the chest. He had some swelling and tenderness over the right ankle, and there was evidence that the ankle had been broken. His back was hurt. He suffered serious head and other injuries and has suffered since with headaches. There was also evidence to the effect by Dr. Kearby that he received concussion of the brain in addition to numerous other injuries.

There is other evidence in the record that will be fully set out if occasion requires.

At the conclusion of plaintiff's case, the defendant requested a peremptory instruction in the nature of a demurrer, which was by the court refused. Again at the close of the whole evidence, defendant requested a peremptory instruction in the nature of a demurrer, which was by the court refused.

The cause, being submitted to the jury, resulted in a verdict for the plaintiff for $6500, which was reduced by *remittitur* to $5000, upon which verdict so reduced judgment was duly entered for $5000.

Error is assigned upon this appeal as follows:

"First: The court erred in overruling defendant's instruction marked 'A', in the nature of a demurrer to the evidence, offered at the close of plaintiff's case.

"Second: The court erred in overruling defendant's instruction marked 'A', in the nature of a demurrer to the evidence, which was re-offered at the close of the entire case.

"Third: The court erred in refusing to strike from the record, upon motion of the defendant, incompetent, irrelevant and prejudicial testimony offered by the plaintiff.

"Fourth: The court erred in admitting, over the objections and exceptions of the defendant, incompetent, irrelevant and prejudicial testimony offered by the plaintiff.

"Fifth: The court erred in giving, over the objections and exceptions of the defendant, plaintiff's instruction numbered one."

█ The grounds upon which defendant insists that it was error for the trial court to refuse his requested instruction "A," both at the close of plaintiff's evidence and at the close of all of the evidence, are that the plaintiff's contributory negligence as a matter of law precluded his right of recovery upon the charge of primary negligence and that, under the allegations charging negligence under the humanitarian rule, the plaintiff had, under the evidence, failed to make out a case for submission to the jury.

The charge based upon primary negligence was abandoned by plaintiff upon the submission of the cause to the jury and is out of the case. It is therefore unnecessary to consider defendant's contention so far as error claimed by him in the refusal of his requested instruction in the matter of a demurrer is predicated upon the refusal of the court to grant the demurrer against the case made by the plaintiff upon that charge. Such charge was not submitted to the jury. It would therefore serve no useful purpose to resurrect it.

█ The defendant contends that the evidence in support of the charge of negligence under the humanitarian rule was not sufficient under the petition to entitle plaintiff to a submission of his cause to the jury upon such issue. He contends that the petition charged that plaintiff, at the time of his injuries, was upon that part of Twenty-second Street traveled by automobiles and not upon any sidewalk and was crossing the street from west to east, "and at said time and place was in the path of said approaching automobile and in a position of imminent peril and where he was likely to be struck by said automobile, which at said time was approaching the plaintiff from the south and that he was oblivious of his peril;" charged that the defendant, in the exercise of the highest degree of care, could have seen plaintiff on Twenty-second Street "in the path of said automobile and in a position of imminent peril and oblivious of his peril, in time thereafter" to have warned him and to have avoided striking him but that the defendant did not sound a horn or give a warning; and charged that he did not stop his automobile, slow the same, or turn it to one side. It is also alleged that the defendant failed to look for pedestrians upon the street and drove at a high and dangerous rate of speed and failed to apply his brakes and that, as a result, plaintiff was injured.

Later, the petition again alleged, "And though the plaintiff was in a position of peril, or coming or going into a position of peril, said defendant knew, or by the exercise of the highest degree of care could have known of the same in time" to have stopped his automobile, slackened its speed, turned it to one side, or given warning.

It is contended by defendant that, by such allegations, the plaintiff restricted the operation of the humanitarian rule to the immediate path of defendant's approaching automobile while he was in such path and in a place of imminent peril in front of defendant's approaching car; that such allegations were not broad enough to cover plaintiff while coming or going into said path into a place of peril but only covered plaintiff in the situation of peril while actually in said path and while coming into a situation of peril thereon from the increasing nearness of defendant's automobile as it at all times came closer to him; that defendant's liability under the humanitarian rule must therefore be determined from the evidence as it applied to himself and plaintiff while plaintiff was actually in the path of his car as it approached him and as he was coming or going into a situation of peril thereon from the nearness of the approach of the defendant's car to him; that defendant owed plaintiff no duty to make any effort to avoid striking him until he was actually in said path or in a position of peril therein; and that, under his petition, before plaintiff could recover, he was required to show just when he came into defendant's path and the relative situations of himself and defendant at that exact time and that defendant did see him or could, in the highest degree of care, have seen him and had time thereafter to have so manipulated his car with safety as to have avoided striking and injuring him and that no such showing has been made under the evidence in this case.

The first two paragraphs of the petition, quoted, place plaintiff, at the time he was injured, upon the pavement in the path of the defendant's car in a present position of imminent peril of danger from its approach; and they are followed by allegations to the effect that, after defendant discovered plaintiff's position of peril, defendant had time to have avoided striking and injuring him. However, by the last paragraph quoted, the allegations of the petition were broadened to cover the situation of plaintiff while going or coming into such peril, whether from the approach of the automobile as it came nearer to him or as he was approaching said path and going or coming into the same.

■ Even though the petition had fixed the place of imminent peril in which plaintiff was at the time he was injured upon that part of the pavement which was in the path of the approaching car, as contended by defendant, it does not follow that the defendant owed him no duty if he saw or could have seen him proceeding upon the pavement into his path apparently oblivious of his near approach and going immediately into a position of imminent peril therein where he was injured. [Gray v. Columbia Terminals Co., 331 Mo. 73, l. c. 80, 52 S. W. (2d) 809.]

If defendant owed plaintiff no duty until plaintiff actually came into the path of his approaching car and into a place of imminent danger thereon, then defendant's contention is correct because no other conclusion is to be reached from the evidence than that plaintiff must have come upon the path when defendant was right upon him and had no time thereafter to have so managed his car as to have avoided striking him.

█ The law seems well settled, however, that, under the humanitarian rule, it is the duty of the driver of a car to stop his automobile or to give warning to another of its approach when he sees or, by the exercise of the highest degree of care, can see such other walking heedlessly toward the path of his automobile and about to enter thereon apparently oblivious of his danger. [Burke v. Pappas, 316 Mo. 1235, 1. c. 1243, 293 S. W. 142; Phillips v. Henson, 326 Mo. 282, 30 S. W. (2d) 1065.] A person may be in peril as he approaches the path of a car. His peril arises as soon as it becomes apparent by his conduct that he intends to go upon the path without stopping. The law does not limit the zone of imminent peril to the exact confines of the path and until the plaintiff takes the last step therein. (Same authorities last cited.) The plaintiff may not so confine it by the allegations of his petition.

Under the humanitarian rule, the conduct of the driver must be measured from the point in time when, by the exercise of the highest degree of care, he can see plaintiff and see that he is in a perilous position or is unknowingly entering into a perilous position; and, if, after discovering plaintiff's perilous position either as he is in or is about to enter therein, such driver has time and opportunity, by the prompt use of the facilities or appliances at hand, to avoid injury to plaintiff by stopping his car or slowing his speed or turning his course or by any other means without injury to himself or others and fails so to do, he is guilty of negligence under the humanitarian rule. [State ex rel. Himmelsbach v. Becker et al. (Mo.), 85 S. W. (2d) 420, and authorities cited thereunder.]

In Banks v. Morris & Co., 302 Mo. 254, 257 S. W. 482, 1. c. 484, it was said (referring to the humanitarian rule): "It 'proceeds upon the precepts of humanity and of natural justice to the end that every person shall exercise ordinary care for the preservation of another after seeing him in peril or about to become imperiled, when such injury may be averted without injury to others.' "

In Shumate v. Wells (Mo.), 9 S. W. (2d) 632, it was held that it was the motorman's duty in that case to act as soon as it became apparent, from the movements of the automobile of another with which it contacted, that the driver intended to cross the street ahead of the car.

In Hencke v. St. Louis & H. R. Co. (Mo.), 72 S. W. (2d) 798, l. c. 800, it was said: "Of course, plaintiff would not have been hurt if his automobile had not come upon or so near the crossing that it could be struck by the train, but we have many times held that in such cases the danger zone extends over the distance traversed by plaintiff after he was observably approaching a place of imminent peril of which he was oblivious."

In the case of Gray v. Columbia Terminals Co., supra, it was held that the defendant's duty to act arose when the injured party was in a perilous position or was unknowingly entering into a position of peril and danger.

In the case of Martin v. Fehse, 331 Mo. 861, 55 S. W. (2d) 440, l. c. 442, it was said: "Under the humanitarian rule, the conduct of the driver must be measured from the point and time when by the exercise of the highest degree of care he could have seen (the injured party) plaintiff, apparently oblivious of the approach of the automobile, about to enter into a place of danger."

In the case of Iman v. Walter Freund Bread Company, 332 Mo. 461, 58 S. W. (2d) 477, l. c. 480 and 481, it was said, speaking of the humanitarian rule, "This rule is to the effect that if the driver of this dangerous instrumentality saw, or by the exercise of the highest degree of care would have seen, this plaintiff in or about to go into a place of imminent peril of collision with this truck, 'and this truck driver then had the time and opporunity, by the prompt use of the facilities and appliances at hand, to have avoided striking plaintiff by ——" etc.

In the case of Allen v. Kessler (Mo.), 64 S. W. (2d) 630, l. c. 632, it was said: "We fully agree with defendant's statement of the law to the effect that the humanitarian rule does not obtain where the evidence favorable to plaintiff does not show that defendant could have averted the injury after he saw or could have seen the plaintiff in or about to come into a position of peril, as is held by many cases." [State ex rel. Himmelsbach v. Becker et al., supra, quotes this approvingly.]

It is thus seen from the authorities cited and quoted that it is the duty of the driver of a car to act when he sees one heedlessly and unknowingly entering or about to enter his path in front of his moving car into a place of imminent peril.

The plaintiff's evidence tends to show that he entered the intersection at or about the northwest corner thereof and walked across the pavement thereon to the northeast corner thereof; that, just before he reached such corner, he noticed the defendant's car just about upon him and leaned forward in an effort to get out of its path when his right hip and leg were struck by the fender of defendant's car. He saw the car coming from the south, about a distance of 200 feet

away, just as he started across the intersection; but he did not look in that direction again and never saw the car again until, he reached the point where he was struck, when it was within about eight to ten feet of him and about upon him. There was nothing between plaintiff and defendant's car to prevent the defendant from seeing him at all times while plaintiff was upon the crossing. The intersection in question is a busy intersection where many people are in the habit of crossing, especially on Saturday evening, the day of the week upon which the accident complained of happened; and it was defendant's duty to keep a lookout for others thereon or crossing thereat. The defendant admits that, when he was at a point some distance away from the intersection, almost a block, he saw the plaintiff walking on the intersection. True, he says, when he first saw him, plaintiff was walking toward the west and was about the center of the intersection; but he further says that, when he saw him walking west about the center of the street, he noticed him turn back and cross to the northeast corner; and he claims that he saw plaintiff step on the curb on said corner and then stagger back into the street into the path of his car, when he was struck by the right fender of the car after it was too late for defendant to have avoided striking him. The evidence on the part of the plaintiff tends to show that plaintiff walked directly across the pavement without stopping or turning and that he was struck before he reached the east curb. It tends also to show that the defendant was driving his car at about the speed of twenty-five miles per hour and never at any time slowed down or slackened his speed as he approached the plaintiff on the crossing or sounded his horn or turned his car from its course or did anything whatever to avoid striking him or to warn him. It is true that defendant says that he was traveling only fifteen to twenty miles per hour; that, when he saw plaintiff, he slowed down his speed; and that, when he came on the intersection, he sounded his horn and again slowed down and attempted to turn his car toward the center of the street to avoid striking the plaintiff but that he was too close to him at that time to avoid striking him. However, the jury resolved all conflicts in the evidence against the defendant; and, besides, upon the consideration of a demurrer to the evidence, we are required to accept as true the evidence favorable to the plaintiff with all inferences arising therefrom.

Plaintiff's evidence tends to show that the car which defendant was driving was in good mechanical condition for operation and that, traveling at the rate of twenty-five miles per hour, could have readily been stopped in twenty-eight to thirty-two feet and when traveling at eighteen miles per hour in eighteen to twenty feet and when traveling at twenty miles per hour in twenty-two to twenty-five feet although it would continue to roll until the brakes took effect.

The duty of defendant to take steps to avoid injury to plaintiff arose when he saw plaintiff or could have seen him crossing the pavement apparently intent upon going into the path of his car as he approached the same apparently oblivious of his danger in going into a position of danger thereon. He had full view of plaintiff and should, under the evidence, have seen that, in crossing the pavement, plaintiff was going directly into the path of his car and into a place of imminent danger of being struck by his car as he approached plaintiff. It was his duty to keep a lookout, and there was nothing to prevent his seeing plaintiff. From the time that he admits first seeing plaintiff crossing the street to the east corner thereof, when plaintiff was a little less than a block from him, he could see that plaintiff, in crossing the street, was going in front of his car in close proximity and that he was rapidly approaching the point where plaintiff would come upon his path apparently oblivious of his approach and where he was likely to strike plaintiff. He could see that plaintiff was in peril as plaintiff approached to cross his path. [Phillips v. Henson, supra; Burke v. Pappas, supra.]

The evidence favorable to plaintiff tends to show that defendant was approaching the point where plaintiff would cross his path upon the intersection at the rate of twenty-five miles per hour and at the rate of about thirty-six feet per second. From the evidence favorable to the plaintiff, the defendant failed to warn the plaintiff in any manner of his immediate approach or to avoid striking and injuring him. He could have stopped his car under the evidence, going at twenty-five miles per hour, within a distance of from twenty-eight to thirty-two feet and within about two seconds of time. Thus, he had ample time and distance within which to have slowed down or to have stopped his car after discovering the presence of plaintiff on the pavement, going into defendant's path, oblivious of his danger, into a perilous position, and could thereby have avoided striking him; and defendant was negligent in not doing so.

Moreover, the defendant, by his answer, is in no position to make the claim that plaintiff was not oblivious of his danger and could have avoided it. His answer, in effect, alleges that plaintiff was oblivious. While the evidence shows that plaintiff saw the lights of the car from 200 feet away when he started across the intersection, he was proceeding in an easterly direction, without looking to the south, oblivious of the near approach of the car to him and of his impending danger until the moment when the car was upon him. [Woods v. Moffitt, 225 Mo. App. 801, 38 S. W. (2d) 525; Allen v. Purvis (Mo. App.), 30 S. W. (2d) 196; Hart v. Chicago, M. & St. P. R. Co. (Mo. App.), 265 S. W. 116; Milward v. Wabash R. Co., 207 Mo. App. 345, 232 S. W. 226; Schmitter v. United Rys. Co. of St. Louis (Mo.

App.), 245 S. W. 629.] We are of the opinion that the plaintiff made a *prima facie* case for submission thereof.

It is accordingly held that the trial court did not err in refusing defendant's requested instruction "A" at the close of the whole evidence and rightly submitted the cause to the jury.

■ The defendant is not in a position to urge error in the refusal of his requested instruction "A" at the close of plaintiff's case; he waived such right in putting in his own evidence; but he did not waive the right to insist, at the close of the whole case, that, upon the whole evidence in the case, the plaintiff was not entitled to a submission, even though defendant had not again requested the instruction at the close of the whole case. He did, however, request the instruction at the close of the whole case; and, under his contention that error was committed in its refusal, we have reviewed the whole evidence and found adversely to his contention. It is therefore unnecessary to review again the evidence in connection with his contention that it was error to refuse such instruction at the close of plaintiff's case, to determine whether or not plaintiff at that time had made a *prima facie* or submissible case. He has waived the right to insist upon error in its refusal. [Pullen v. Hart, 293 Mo. 61, 238 S. W. 437; Guenther v. St. Louis, I. M. & S. R. Co., 95 Mo. 286, l. c. 289, 8 S. W. 371; Bowen v. Chicago B. & K. C. R. Co., 95 Mo. 268, 8 S. W. 230; McPherson v. St. Louis, I. M. & S. R. Co., 97 Mo. 253, l. c. 255, 10 S. W. 846.]

■ Defendant complains that the trial court erred in refusing to strike from the record upon his motion certain incompetent, irrelevant, and prejudicial testimony offered by plaintiff upon the trial.

However, we do not find that such was called to the attention of the trial court in the motion for a new trial. Before the trial court may be convicted of error, such error must have been called to its attention in the motion for a new trial so that it might have an opportunity to correct it. This is elementary. It is unnecessary to submit citations.

■ He complains also that the court erred in admitting over the objections and exceptions of the defendant certain incompetent, irrelevant, and prejudicial testimony offered by the plaintiff and refers to certain evidence alleged to have been given by the witness Vogel (or Goble) found upon pages 81, 82, 87, 90, 91, 116, 118, 119, 121 of the record. Whether it was error or not depends upon whether such evidence was in fact given and whether proper objection was made thereto at the time. That referred to on pages 81 and 82 was never given. A question was asked by which it was sought to be elicited, but it was objected to by defendant, and the particular question was never answered. No such evidence was given.

Afterward, an entirely different hypothetical question was asked the witness, calling for his opinion as to how quickly defendant's car might be stopped when running at twenty-five miles per hour, to which defendant again objected that it was based upon facts of which there was no evidence in the record and that it was repetition, which objection the court overruled. An examination of the record reveals that there was evidence of the facts assumed in such questions. Where such is the case, the trial court may not be convicted of error in overruling the objection. That it was repetition is immaterial. The record does not show that any objection was made by the defendant to any of the other evidence offered, specifically complained of, at the time it was offered and admitted.

There is therefore nothing to review in connection with the admission of such evidence. [McCauley v. Anheuser-Busch Brewing Ass'n, 300 Mo. 638, 254 S. W. 868; McQuary v. Quincy, O. & K. C. R., 306 Mo. 697, 269 S. W. 605; Carl v. East St. Louis & S. R. Co. (Mo. App.), 258 S. W. 72; Gilchrist v. Kansas City Rys. Co. (Mo.), 254 S. W. 161.]

While it is true that the evidence of experts must be predicated upon facts or conditions proved or conceded to be true when objection is made at the time it is offered, yet, if objection be not made based upon such reasons at the time the evidence is offered, the trial court is not convicted of error in its admission. [Mueller v. St. Louis Public Service Co. (Mo. App.), 44 S. W. (2d) 875, l. c. 877.] Whatever might have been the duty of the trial court in sustaining a motion to strike upon the grounds that, from evidence afterward elicited, it was shown that the facts upon which the expert's opinion was founded did not in fact exist (as where such expert based his opinion upon facts as of his own knowledge and it afterward appeared that he had no such knowledge) cannot be determined in this case for the reason above stated. The court is not charged with an erroneous ruling upon the motion to strike in the motion for a new trial. The question under this head relates to error only in the admission of such opinion evidence.

■ Defendant also complains that the court erred in refusing to strike the certain evidence of Dr. H. D. Kearby found at pages 93, 110, 112, 104, 105, 106 of the record, upon motion therefor by defendant.

No complaint having been made of the action of the court in overruling the motion to strike in the motion for a new trial, the action of the trial court is not open for review by us.

There was no objection made to the admission of the evidence sought to be stricken at the above pages 110, 112, 104, 105, 106 of the record; nor is there any complaint here that it was erroneously admitted; and no such question is presented to us for review.

At page 93 of the record, it appears that Dr. Kearby was asked by plaintiff's attorney if there was any complaint by plaintiff of any pain in the arm, to which the witness responded, "—he still has pain in his foot on motion; there is an enlargement of his ankle; he has what seems to be thickening of the fibula on the ankle; he has pain in the arch of his foot."

The defendant thereupon requested the court to strike that part of the answer about the pain in the arch of the foot, which request the court denied. No reason was given to the court by the defendant at the time why it should have been stricken, and it was not apparent that it should have been. There was therefore no error in the court's action in refusing the request to strike.

■ Complaint is also made of the cross-examination by the plaintiff's attorney of Dr. J. M. Allaman, a medical expert witness, who testified for defendant. The questions and answers complained of are as follows:

"Q. What effect would the shock have on the blood pressure? A. It would effect it.

"Q. Would it aggravate it? A. Probably."

It appears from the record that no objection was made to the examination until after the above questions were asked and the answers made, when defendant's attorney interposed the following objection: "We object to that." Such an objection constituted no objection at all. [Home Exchange Bank of Jamesport v. Koch, 326 Mo. 369, 32 S. W. (2d) 86; Drake v. Kansas City Public Service Co., 333 Mo. 520, 63 S. W. (2d) 75.]

■ Defendant finally complains that instruction No. 1 given for the plaintiff was erroneous in two particulars: (a) because it is broader than the pleadings, and (b) because it did not require the jury to find that plaintiff was oblivious of his peril at the time he was going into a position of imminent peril.

The insistence that it is broader than the pleadings is based upon the contention that the petition alleged solely that plaintiff was in the path of the automobile when he was struck while the instruction authorized recovery if, at such time, he was going into the path of the automobile.

It is true that the petition does charge that plaintiff was in the path of defendant's approaching automobile in a position of imminent peril; but, by the later allegations therein, it was broadened to cover the situation of plaintiff while coming or going into such path, so that it was broad enough not only to cover plaintiff while he was in a position of peril in the path of defendant's car but while he was approaching said path and going into said path in a place of peril. The instruction required the jury to find not only that the plaintiff

was in the path of the car or going into said path but, in either event, that he was in a position of imminent peril.

The evidence favorable to plaintiff shows that, at the time he was actually struck by defendant's automobile, he was in the path thereof and about to go out. Under the allegations of the petition, it is inconceivable that he could have been struck by defendant's car except when in the direct path of the car or going into such path unconscious of his danger at such close proximity that defendant could not avoid striking him. The last allegation of the petition was broad enough to cover plaintiff's situation while in the path of imminent peril. He was in such danger as he proceeded across the intersection intent on crossing defendant's path, oblivious of his danger. The instruction is within the allegations of the petition. Defendant's contention must therefore be denied.

Defendant's further contention that the instruction was erroneous because it failed to require the jury to find that plaintiff was oblivious of his danger as he was approaching and going into defendant's path is likewise, in our opinion, not well-founded, considering the entire record in this case.

In support of his contention that the instruction is erroneous because it did not require the jury to find that plaintiff was oblivious of his danger as he was approaching and going into defendant's path, defendant cites Lakin v. Chicago, R. I. & P. Ry. Co., 78 S. W. (2d) 481, the opinion in which was written by Judge SHAIN of this court. What was said by Judge SHAIN in that opinion concerning plaintiff's instruction 1 therein has no application to the question here. In that case, the court said: ''Reverting to plaintiff's instruction 1, the language used, 'coming into a position of imminent peril,' without any qualifications as to obliviousness, we conclude gives an entirely too roving commission to the triers of fact.''

It will be noted that the instruction complained of in this case is essentially different from the one criticised by Judge SHAIN in the Lakin Case. In the case at bar, it requires the jury to find that plaintiff was in the path of defendant's automobile or going into such path and in a place of imminent danger and that defendant saw or could have seen ''that the plaintiff was going into or was in the path of said automobile and in danger and imminent peril of being struck,'' etc. In such circumstances, it is not necessary that the court should instruct the jury that it must find that plaintiff was both in imminent peril and oblivious of his danger. That he was in imminent peril and danger and defendant had knowledge of it are the ultimate issuable facts.

In this case, it was required that the jury find that plaintiff was in a position of imminent peril and not (as in the Lakin Case) that he was going into such a position.

It may be and doubtless is the law that one who is not in a position of imminent peril but only going into such a position cannot recover unless he shows that he was oblivious to his peril; but, where the question is whether the plaintiff is in a position of immediate danger, obliviousness is but an evidentiary fact to be considered where shown with all the other facts in determining the ultimate fact of imminent peril.

In such circumstances, it is not necessary to plead it. [Banks v. Morris & Co., supra.] When the ultimate fact of imminent peril is shown, it is immaterial from what cause it arises. It is well-settled that a person may be in imminent peril because he is oblivious or because, though well aware of his danger, he cannot extricate himself from his situation or, it may be, because of his sheer hardihood and recklessness.

"In some instances obliviousness of danger on the part of the plaintiff is necessary to make the situation in which he is placed one of peril. In such cases it is of course incumbent upon the plaintiff to make proof of the facts and circumstances tending to show obliviousness, not only for the purpose of establishing that he was in a position of peril, but to bring home to defendant a knowledge of his peril. In these cases, however, obliviousness is but a subsidiary or evidentiary fact, the perilous situation of plaintiff and defendant's knowledge of it are the ultimate, issuable facts." [Banks v. Morris & Co., supra, l. c. 484 and 485 of 257 S. W.]

In Wenzel v. Busch (Mo.), 259 S. W. 767, plaintiff's instruction told the jury that, if they believed that the driver, by keeping a vigilant watch, "would have seen plaintiff on or moving towards the portion of said street over which said automobile was about to be operated and in peril of being struck thereby" and could have avoided the accident, the plaintiff could recover. It was claimed in that case that the instruction was erroneous because it did not require the jury to find that plaintiff was oblivious. The court held otherwise. It will be noticed that the instruction in that case required a finding only that the plaintiff was in the path of the car or moving into the path of the car and that he was in a position of imminent peril. That is this case.

In Nabe v. Schnellman (Mo. App.), 254 S. W. 731, l. c. 734, the court disposed of an objection to an instruction omitting the requirement to find that the plaintiff was oblivious of his danger as follows: "Coming to counsel's contention that instruction No. 3 is erroneous because the petition failed to state that plaintiff was oblivious to his peril, and that it did not require the jury to find that the plaintiff was oblivious to the danger, in view of the recent ruling on this question by the Supreme Court of this State, in Karte v. J. R.

Brockman Mfg. Co., 247 S. W. 417, and Wenzel v. Busch et al., 259 S. W. 767, we must rule this contention against the defendant."

In Clark v. Atchison, T. & S. F. R. Co., 319 Mo. 865, 6 S. W. (2d) 954, Clark was killed by an approaching engine. Plaintiff's testimony tended to show that he was on the track with his back toward the approaching engine. Defendant's testimony tended to show that he was on an adjacent track looking in the direction of the engine and attempting to cross the track as the engine approached. The plaintiff's instruction 2 required the jury to find "That while so upon or while so approaching and going upon said railroad tracks at that time and place, the said J. M. Clark was in a position of imminent danger and peril because of the approach of the engine and train—" It did not require a finding that Clark was oblivious to the approach of the train. The court held that there was evidence sufficient to show that Clark was in a position of imminent peril because that constituent element of the humanitarian rule was established by the evidence that Clark was on the track and was oblivious to his peril and held that the instruction was not open to the objection made to it. The court said at page 960 of 6 S. W. (2d): "In view of the evidence, we see nothing wrong with instruction 2. That Clark was in a position of imminent peril was a constitutive element of the cause of action, one of the ultimate facts which it was necessary for plaintiff to plead and prove —and which, of course, it was necessary for the jury to find in order to warrant a verdict in her (plaintiff's) favor."

In Montague v. Missouri & K. I. R. Co., 305 Mo. 269, 264 S. W. 813, the instruction did not require the jury to find that the driver of the car was oblivious of the danger. The Supreme Court held, "The instruction is well enough," and observed at page 817 of S. W. 264:

"Next it is urged the instruction 'is erroneous in form and omits elements necessary to a recovery under the humanitarian rule.' [Knapp v. Dunham (Mo. App.), 195 S. W. l. c. 1063, and Lackey v. Railways, 288 Mo. l. c. 143, 231 S. W. 956, are cited, among others.] These cases proceed upon the theory that it was necessary for the jury to find that the driver was oblivious of his peril before there could be a finding for plaintiffs. At least this is one of the things suggested in these cases. The doctrine of obliviousness as to peril has undergone a recent review by this court. [Banks v. Morris & Co. (Mo.), 257 S. W. 482.] Many of the old cases are no longer authority, and such is the situation here."

It is therefore apparent from the authorities in Missouri that, where the question is whether plaintiff is in a place of imminent peril and the jury is required so to find, it is not necessary that the jury further find that he was oblivious of his peril.

From these and many other cases decided since the Banks case, it

would seem that the rule as to what must be pleaded and what the jury must be instructed to find is clearly settled. One of the constitutive elements of the humanitarian rule is that the injured person must be in a position of imminent peril. It is not enough that he should be going into a perilous position. To put a person going into a position of peril in a position of peril, it must also be shown that he was oblivious of his danger. When both of those facts are shown, he is in a position of peril. Since it is necessary to plead only that the injured person was in a position of imminent peril and that the defendant knew or should have known it and not necessary to plead in addition thereto that he was oblivious of his peril and since the jury is required to find only the ultimate facts, it follows logically that the jury need not be instructed to find both that the injured person was in a position of peril and was oblivious of his danger; for that would require the jury to find more than the plaintiff is required to allege and, in many instances, more than he is required to prove to establish a position of imminent peril.

Moreover, even if obliviousness upon plaintiff's part was an essential element of his case, it was not necessary in this case to submit that issue to the jury; because it was not a contested issue upon the trial. We have held in the early part of this opinion that defendant, by reason of his answer, is in no position to contend that plaintiff was not oblivious. The allegations of his answer are such that they must be construed as an admission of plaintiff's obliviousness. In many cases where the answer is essentially the same as here if not exactly, such answers have by the courts been construed as admissions by defendant of plaintiff's obliviousness, relieving plaintiff of the necessity of proving obliviousness upon his part and rendering it unnecessary to require the finding of such fact by the jury through an instruction. [Allen v. Purvis, supra; Fledderman v. Manufacturers' R. Co. (Mo. App.), 254 S. W. 717; Packer v. Chicago M. & St. P. R. Co. (Mo. App.), 265 S. W. 119; Dincler v. Chicago M. & St. P. R. Co. (Mo. App.), 265 S. W. 113; Crockett v. Kansas City Rys. Co. (Mo. App.), 243 S. W. 902; Hart v. Chicago M. & St. P. R. Co., supra; Milward v. Wabash R. Co., supra; Schmitter v. United Rys. Co. of St. Louis, supra; Woods v. Moffitt, supra.]

There is no error in plaintiff's instruction No. 1, and defendant's complaint thereof is denied.

We have disposed of all the complaints made by the defendant adversely to him. The verdict and the judgment upon the record were for the right party. The judgment should be and is ordered to be affirmed. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion of REYNOLDS, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.